Hall *v.* Fisher.

———————

| 20b | 441 |
| 158a | 247 |

ELIPHALET HALL, who sues in his own right as well as administrator &c. of Ephraim Hall deceased, *vs.* AUSTIN FISHER and others, executors &c. of Henry Fisher deceased.

A complaint filed by a plaintiff in his own right as well as in the character of administrator of E. H., against the defendants as the executors of H. F., alleged that the plaintiff and his intestate E. H. were in the lifetime of the latter, tenants in common owning one undivided quarter with H. F. in his lifetime, who owned three quarters, of a lot of land, and iron ore bed, &c. And the plaintiff claimed that the defendants should account to him in person and as administrator of E. H., for their share of the rents and profits, avails and income of the ore bed &c., and for their share of the ore dug and raised by H. F., and for their share of the moneys had and received by H. F., including what he ought to have received for the use, rents and profits of the improvements, buildings, fixtures and erections of the plaintiff and E. H., and for the wear and damage of the same &c., and for the loss, damage and injury sustained by the

plaintiff and E. H. by reason of the acts done by H. F. while in the exclusive possession, &c. *Held*, on demurrer, that there was an improper joinder of claims in the complaint, in attempting to unite the rights of the plaintiff personally with those in his representative character; the claims being inconsistent and adverse.

The same complaint, in addition to a claim for an account, after setting out the title of the plaintiff and his intestate, to one quarter of the lot and ore bed, and showing large and valuable erections and fixtures made by them, averred that H. F., contriving and intending to injure and defraud the plaintiff and E. H., and *falsely pretending* that they were not the owners of one-fourth part of said lot and ore bed, but that he was sole owner thereof, procured an injunction, and caused the same to be served on the plaintiff and E. H., restraining them from digging or raising any iron ore on said lot &c., and by means of such service thereof occasioned all the *damages* which the plaintiff alleged were sustained. The plaintiff also claimed to recover damages for trespass on houses, erections and fixtures which the plaintiff and E. H. erected, at an expense of $5000, and for their share of the expense of those erections. The complaint also alleged that H. F. diverted to his own use a quantity of ore dug and raised by the plaintiff and E. H. ; and that he received $20,000 profits, and might with proper management, have received $20,000 more. *Held* that the complaint was defective in joining causes of action arising upon *contract*, with claims of damages for *injuries to property* and for torts and causes of action arising from *negligence*, with a claim for an *account* of rents and profits of real estate.

*Held also*, that the falsely and fraudulently obtaining an injunction, and the damages occasioned by its service, were not a matter of account, and formed no ground for a bill in equity or an action under the statute. (1 *R. S.* 750, § 9.)

The bond given by the party obtaining an injunction affords an ample remedy for any damages sustained by the defendant, and to an action upon such bond he must resort for indemnity

An action for malicious prosecution will not lie until the final termination of the suit; and the complaint must allege a want of probable cause, by averring that the suit was finally determined in favor of the defendant therein.

THIS was an appeal from an order made at a special term, allowing a demurrer to the complaint. The plaintiff averred that on, and for a long time previous to the 12th of June, 1845, the plaintiff and his intestate were seised and possessed as tenants in common in fee simple, in their own right, of the one equal undivided fourth part of an iron ore bed on lot No. 42 of the iron ore tract in the county of Essex and state of New York, together with all the privileges appertaining thereto, and of all necessary timber and utensils on the lot, necessary to use,

in digging and carrying away the ore. That Henry Fisher, the defendant's intestate was, at and during the same time, the owner and possessor of the remaining three-fourths of the said lot and the ore rights and privileges, as tenant in common with the plaintiff and his intestate; that a very valuable mine or bed of iron ore was situated on said lot, which during the said time was worked by the said Halls and returned to them for their share thereof an annual value of $10,000 and upwards. That said Halls, previous to and on said 12th day of June, 1845, had expended $10,000 in opening and uncovering the bed and in working it, and had also expended $5000 and upwards in erecting and putting up shops, dwelling houses, barns, scales, coal houses and various other erections and fixtures for their necessary use in enjoying and availing themselves of the benefits, rights and privileges of the said lot. The complaint further averred that the said Henry Fisher, on the said 12th day of June, 1845, contriving and intending to injure and defraud the said Halls, and falsely pretending that they were not the owners of one-fourth part of said ore and said rights and privileges, but that said Fisher was the sole owner thereof, procured and caused to be served on the said Halls, an injunction out of the (then) court of chancery of the state of New York, enjoining and commanding the said Halls and their agents and servants to desist and refrain from digging or raising any iron ore on said lot 42, or from taking and carrying away, or selling, any ore raised or dug thereon since the 1st day of May, 1845, or from cutting any timber, or collecting any claims or debts, or discharging any, on account of ore dug since that day. That at the time of the service of said injunction the said Halls had on hand on and near said lot 42, one thousand tons of iron ore, of the value of $3000, which they had raised from said bed between the 1st of May, 1845, and the issuing and service of said injunction, which they were entitled to use and sell, but which, by reason of said injunction they were wholly prohibited from selling or using, and the same was taken possession of by said Fisher, and by him converted to his own use, or by his negligence wasted and destroyed, and said Halls never recovered possession of the same. That

there were divers debts due the said Halls, for ore raised, which they were prevented by said injunction from collecting, whereby many of them became bad and uncollectable, and entirely lost; especially a debt against one Chester Stephens of $300, for iron ore dug by him, who, while said injunction was pending, became insolvent and the said debt became lost. That said Halls were also deprived of the privilege of digging ore and of the benefit of their expenditure and labor in uncovering and opening the said ore bed, and deprived of the use and benefit of their buildings, erections and fixtures, and the said Henry Fisher took the sole and exclusive possession of the said ore bed with the appurtenances, and of all the rights and privileges of the said Halls, and of the buildings and erections, and of the ore on hand dug and raised since the said 1st day of May, 1845, and wholly excluded the said Halls therefrom, and so held them exclusively till the 13th of May, 1847, at which time the said Henry Fisher died, having first made and published his last will and testament, and appointed the defendants his executors, which will was, after his death, proved, and letters testamentary granted to the defendants as executors, by the surrogate of the county of Essex, on the 3d of June, 1847. The complaint further averred, that while said Henry Fisher held and retained the sole use and occupation as aforesaid he received to his own use the whole of the profits and income of the said bed &c., amounting to the sum of $20,000, one-fourth of which belonged to the said Halls, for which the defendants ought to account; and that said Henry injured and damaged the improvements and buildings &c. erected by said Halls, by carelessness, negligence and improper usage, to the value of $1000, and while he used and held the same might have realized, by proper management thereof, a further sum of $20,000, to one-fourth of which said Halls would have been entitled; all of which was lost by reason of the improper management of the said Henry and his agents, and whereby the said Halls, on regaining possession of said ore beds, were put to the expense of $500 in replacing the same on its former footing, and lost other $500 by the hindrance and delay occasioned by the necessary repairs; for all which the defend-

ants ought to account.  The complaint further averred, that since the death of the said Henry Fisher the said Ephraim Hall died intestate, and letters of administration on his estate were granted by the county judge of Essex county to the plaintiff. That after the death of Fisher and before the death of the said Ephraim Hall, the said injunction was dissolved, and possession of the said lot and beds and all their rights and privileges restored to the said Halls.  The plaintiff claimed that by occasion of the premises the said Henry Fisher became liable to account to the Halls for their share of the use, rents and profits of the ore beds, and for their share of the moneys received by him, and for the other profits which he might have received by proper management, and for the use of the buildings, erections and fixtures, and their wear and damage as aforesaid, and for the injuries occasioned thereto, and for the ore dug and raised by said Halls between said 1st day of May, 1845, and the service of the injunction, and for all losses, damages and injuries by the said Halls sustained; and that the defendants were liable as executors &c. to account to the plaintiff in his own right and as administrator of the said Ephraim, jointly, for such sums as might be proved due from said estate of said Henry upon such accounting, on occasion of the premises.  And they prayed that an account might be decreed on these principles.

The defendant Calvin Fisher demurred to the complaint, for the following causes: 1. That there was a defect of parties plaintiff to the action.  2. That several causes of action had been improperly united in the same complaint.  3. That the plaintiff had improperly in his complaint alleged causes of action existing in his own right, with claims made by him in the capacity of administrator, &c.  4. That the plaintiff had also improperly united in his complaint alleged causes of action arising upon contract express or implied, with claims of damages for injuries with or without force, to property.  5. That the plaintiff had improperly united alleged causes of action in his complaint, arising from negligence, with claims for an account for rents and profits of real property.  6. That the causes of action united in the complaint did not all belong to one class and

were not separately stated. 7. That the complaint did not state facts sufficient to constitute a cause of action.

The court, at special term, ordered judgment for the defendants, on the demurrer, and the plaintiff appealed to the general term.

*Kellogg & Hale* and *G. A. Simmons,* for the plaintiff.

*B. & A. Pond,* for the defendants.

*By the Court,* C. L. ALLEN, J. I am inclined to think there is an improper joinder of claims, by attempting to unite the rights of the plaintiff personally with those in his representative character as administrator of Ephraim Hall. The two Halls, as charged in the complaint, were tenants in common owning one quarter, with the defendants' testator, who owned three-fourths, of the lot and the ore bed. The claim is that the defendants account to the plaintiff in person and as such administrator, for their share of the rents and profits, avails and income of the ore bed, rights and privileges while their testator held the exclusive possession thereof, and for their share of the ore dug and raised by said Henry from the land during that time, and for their share af the moneys had and received, including what said Henry ought to have received for the use, rents and profits of the improvements, buildings, fixtures and erections of the said Halls, and for the wear and damage of the same, and for the injury and obstructions to the use of said ore bed, and for the ore so dug and raised by the Halls between the 1st of May, 1845, and the issuing and service of the injunction, and for the debts which the Halls lost, and for all and singular the *loss, damage* and *injury* which the said Halls sustained by occasion of the premises, of *every nature soever.* The amount due to each tenant in common from his co-tenant, is a several debt to himself alone, (4 *Paige,* 363,) and not to the tenants or a portion of them *jointly.* The rights and claims attempted to be united are inconsistent and adverse. (*Alston* v. *Jones,* 3 *Barb. Ch. R.* 397.) But the plaintiff alleges that this is an

Hall *v.* Fisher.

action for an accounting, and that all parties interested should be made parties to the suit, so that there need to be but one accounting. If this be so, then the causes of action or claims should be separately stated. How else can the defendant, if he has a defense. of a different character against each co-tenant, avail himself of such defenses? He might in this case have one defense against the plaintiff as to his personal claim, and another defense as to the intestate whose rights he claims to represent as administrator. The statement of the causes should have been separate and distinct. (*Code,* § 167, *sub.* 7. 4 *How.* 226. 5 *id.* 171, 177. 8 *id.* 177. *Brady & Ellsworth* v. *Lockwood, MS.*)

But however this may be, I am of opinion that several causes of action have been improperly united in the complaint. The plaintiff claims that the action is for an accounting, against a co-tenant in common, for receiving more than his proportion of the common property. But it is more. The complaint, after setting out the title of the plaintiff and his intestate to one quarter of lot 42 and the ore bed thereon, and showing large and valuable erections and fixtures made by the Halls for their benefit and to enable them to enjoy and work the property, avers that on or about the 12th day of June, 1848, the said Henry Fisher, contriving and intending to injure and defraud the said Halls, and *falsely pretending* that the said Halls were not the owners of a quarter part of said ore and lot, but that he was sole owner thereof, procured an injunction in the manner stated in the complaint, and by means of its service occasioned all the *damages* which *the plaintiff alleges were sustained.* This is not matter of account, and no bill in equity or an action under 1 R. S. 750, § 9, could be sustained upon it. The falsely and fraudulently obtaining this process, and the consequences arising out of its service, seem to form the principal part of the complaint. They are the gravamen of the action. The action of account should be founded upon a relation in the nature of a trust. (3 *Hill,* 60.) The bond required to be given, and which was given at the time of obtaining the injunction, afforded, as it was designed to do, an ample remedy for these damages, and to

an action upon that the plaintiff should have resorted. If this were to be called partly an action for a malicious prosecution—and it would seem to be so, from the nature of the complaint—then it would not lie until the final termination of the suit. The complaint does not allege that the suit has terminated, but only that the injunction was dissolved. It should allege want of probable cause, by averring that the suit was finally determined in favor of the defendant therein. A claim founded in tort is also united in the complaint, for diverting to his own use by the said Henry Fisher 1000 tons of ore dug and raised by the Halls before the service of the injunction.

Another claim is for trespass on houses, erections and fixtures which the Halls erected at an expense of $5000, before the service of the injunction, and the claim for their share of this expense is also added. It is not averred on what land, or where, these erections were made; but the defendant's intestate is charged with wrongfully taking possession of, and using and injuring them by his carelessness and negligence, as well as the ore bed.

The plaintiff also claims that said Henry Fisher received $20,000 profits, and might with proper management have received $20,000 more. Now a tenant in common is not liable for negligence or misuse of the common property, nor for what he might have made by diligence, unless appointed bailiff, &c. (*Henderson* v. *Eason*, 9 *Eng. Law and Eq. Rep.* 337.)

It is said by the plaintiff's counsel that there is but one cause of action, and that all the claims are but parts of one and the same establishment, and incidents of the tenancy in common and of the mining business. But all these are promiscuously stated and jumbled together, and they do not all belong to one of the classes mentioned in the several subdivisions of section 167. It may be questionable, since the decision in *Tripp* v. *Riley*, (15 *Barb.* 333,) whether Henry Fisher could be chargeable and liable to account in this action, unless it was averred and shown that he had received more than his share (three-fourths) of the ore bed. But it is not necessary to pass upon that point, here.

Without further examination I can only say that I fully con-

cur-with the learned justice who delivered the opinion at special term, and in the views there expressed. The order must be affirmed, with $10 costs.

[WASHINGTON GENERAL TERM, January 1, 1855. *Hand, Cady, C. L. Allen* and *James,* Justices.]