RALPH Moss, Individually and as Surviving Executor under the Last Will and Testament of SOLOMON D. Moss, Deceased, Appellant, *v.* JACOB COHEN and SOLOMON D. COHEN as Administrator of the Goods, Chattels and Credits of FANNY COHEN, Deceased, Respondents.

1. ACTION FOR BENEFIT OF ESTATE ON SINGLE CLAIM, ENTITLED AS BROUGHT BY PLAINTIFF INDIVIDUALLY AND AS EXECUTOR — DEMURRER ON GROUND OF MISJOINDER OF CAUSES OF ACTION NOT SUSTAINED. The fact that the plaintiff entitles the action as by himself individually and as executor does not disclose a misjoinder of a cause of action by him

individually, with one by him as executor, and the complaint is not demurrable on that ground, where the plaintiff claims only a single right of recovery which he seeks to enforce as executor and for the benefit of the estate he represents, and it is apparent that whether he recovers in his own name, or as representative of the estate, he can recover only one amount, and the recovery will be for the benefit of the estate to which the money belongs.

2. UNAUTHORIZED DELIVERY OF FUND BY EXECUTOR TO LIFE LEGATEE — AGREEMENT TO REPAY NOT VOID. There is no principle of public policy which requires the courts to hold that an agreement between the executor and a life legatee, by which the former has turned over to the latter a portion of the principal of the fund on receiving an unsecured bond for repayment was void, and the bond unenforceable for the benefit of the estate, merely because the executor was unauthorized to invest the funds of the estate with the life legatee without taking a bond and mortgage for their repayment.

3. UNAUTHORIZED CONTRACT NOT NECESSARILY UNENFORCEABLE. An unauthorized contract which may be illegal in the sense that it is without authority of law, but which contravenes neither morality nor a statute and affects no public interest, is not to be regarded so far illegal as to justify courts in refusing to enforce it, where the refusal would encourage fraud and destroy the obligations of the contract.

4. LIABILITY OF LIFE LEGATEE TO RETURN FUNDS OF ESTATE. The fact that an executor who without authority has paid over a portion of the principal of a testamentary trust fund to the life legatee has been required to deposit other assets of the estate with a substituted trustee in place of the debt of the life legatee to the estate, in no way changes the latter's liability to the estate.

5. UNAUTHORIZED ADVANCE OF FUND TO LIFE LEGATEE BY EXECUTOR NOT LARCENY. Section 528 of the Penal Code, defining the crime of larceny, has no application to the unauthorized act of an executor in advancing to the life legatee of a testamentary fund, being a daughter of the testator, and to her husband, a portion of the fund belonging to them and their children, the remaindermen, and taking their bond as security for repayment to the executor or the persons entitled to it under the will.

*Moss* v. *Cohen*, 15 Misc. Rep. 108, reversed.

(Argued January 19, 1899; decided February 28, 1899.)

APPEAL from a judgment of the General Term of the late Court of Common Pleas for the city and county of New York, entered June 25, 1896, affirming a judgment which sustained the defendants' demurrer to the complaint, awarded them final judgment for costs and disbursements and directed execution thereon.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John W. Weed* for appellant. Leaving out of view the form of the security delivered by the defendants to. the executors at the time of making such advance, the plaintiff as executor would be entitled to recover for the estate the money so advanced, whether the action be regarded as one to recover money loaned or to reclaim money illegally disposed of. (*Lee* v. *Horton,* 104 N. Y. 538.) The payment of the. $6,000 to the defendants for account of the life tenant and remainder-man was not an act so inherently vicious or so contrary to public policy as to render the obligation to repay it to the executors of the estate, as such, absolutely and *ab initio* void. (*Lee* v. *Horton,* 104 N. Y. 538 ; Pollock on Cont. 238 ; *Warwick* v. *Richardson,* 10 M. & W. 284 ; *Henriques* v. *Hone,* 2 Edw. Ch. 119 ; *Printing N. R.* v. *Sampson,* L. R. [19 Eq. Cas.] 465.) The executors were advised and believed that they could lawfully pay $6,000 to the defendants. Such belief makes the indemnification given by the bond enforce-. able. (*Coventry* v. *Barton,* 17 Johns. 142 ; *Stone* v. *Hooker,* 9 Cow. 154 ; *Griffiths* v. *Hardenbergh,* 41 N. Y. 464.) The money was paid from the funds of the estate, and the bond ' was given the executors as such for the protection of the estate. The cause of action runs in favor of the executor. (*Beers* v. *Shannon,* 73 N. Y. 297 ; *Litchfield* v. *Flint,* 104 N.·Y. 543 ; *Schmittler* v. *Simon,* 114 N. Y. 186 ; *Chouteau* v. *Suydam,* 21 N. Y. 179.)

*George H. Yeaman* and *Abraham Cohen* for respondents. The whole transaction was a gross violation of duty by the plaintiff as trustee under the will, was a spoliation of trust funds, and was not, and could not be, any consideration in support of the bond, which is void as being immoral and contrary to public policy. (*Warwick* v. *Richardson,* 10 M. & W. 284 ; *Foot* v. *Emerson,* 10 Vt. 338 ; *Gray* v. *McReynolds,* 66 Iowa, 461 ; *Bank of U. S.* v. *Owens,* 2 Pet. 538 ; *Rife* v.

*Geyer*, 59 Penn. St. 393.)   The amended complaint cures no defect in the original complaint.   On the contrary, it more distinctly shows an unlawful dealing with and use of the trust funds than the original complaint showed.  (*Griffiths* v. *Hardenbergh*, 41 N. Y. 469.)

MARTIN, J.  On the twelfth day of August, 1866, Solomon D. Moss died in the city of New York leaving a last will and testament, whereby he appointed Ralph Moss, David Moss and Sophia Moss, his wife, the executors thereof.   He left him surviving his widow, four sons, Ralph, David, Mordecai and Henry, and three daughters, Fanny Cohen, Adelaide Peyser and Rosa B. Silberstein.   At the time of his death all his children had reached their majority, except Henry, who was then sixteen years of age.

By the testator's will his whole estate, after paying certain legacies, was to be sold by the executors, the proceeds thereof invested in bonds secured by mortgage upon real estate or in securities of the United States, and the income thereof paid to the widow during her natural life.   After her death, the income of twelve thousand dollars was to be applied to the use of each of his daughters during her life, and upon her death the principal was to be distributed equally among her children. Thus, by the will, Mrs. Cohen, after the death of her mother, was entitled to the income of twelve thousand dollars during her life, and upon her death the principal was to be distributed among her children.

Soon after the death of the testator the executors offered the will for probate, when they received notice from Mrs. Cohen that she would contest it upon the ground, among others, that the twelve thousand dollars, of which she was to enjoy the income after her mother's death and which her children were to receive after her death, she did not regard as sufficiently assured to her and them.   In consideration of her making no contest, the executors, for the purpose of assuring the application of the twelve thousand dollars and the income thereof to the benefit of her and her children as provided in

the will, agreed to pay over to her the sum of six thousand dollars from the funds of the estate, to receive therefor her and her husband's bond for the application of that sum to the use of her and her children, according to the terms of the will, and to give a mortgage for the remaining six thousand dollars upon real property belonging to the estate, to secure the application by the executors of the remainder of said sum to the use of Mrs. Cohen and her children.

This agreement was carried out, the will was admitted to probate, and the executors paid over to the original defendants, Mrs. Cohen and her husband, six thousand dollars out of the funds of the estate, and received from them a bond whereby they were held and firmly bound to the executrix and executors, " and to them and each of them severally and individually in the sum of ten thousand dollars." The agreement between the parties was then recited in the bond, and its condition was that the obligors should well and truly indemnify and save harmless the executrix and executors and each of them severally and individually, from and against the repayment of said six thousand dollars to any person who was entitled to the same under the will, and from any damages, costs, or suits by any person entitled by the will either to the income or principal of such six thousand dollars.

The executors also executed and delivered to the defendants a mortgage upon certain real property of the estate to secure the application of the remainder of said twelve thousand dollars to the same use. In making those transfers and in taking and giving such securities, the executors were advised and believed that they were acting lawfully, and that in taking the bond they were receiving adequate security for the application of the six thousand dollars to the purposes specified in the will, so far as the rights of Mrs. Cohen and her children were concerned. These transactions occurred in the year 1866, the bond and mortgage being dated October tenth of that year.

The executors entered upon the duties of their office and continued to discharge them till September, 1891, when the testator's widow died, and the then surviving executors con-

tinued in the performance of such duties until November, 1892, when David died, leaving the plaintiff the sole surviving executor. All the other children of the testator are still living, except Mrs. Cohen who has died since the commencement of this action.

Mrs. Cohen and her husband have several children who were entitled to receive the principal sum of twelve thousand dollars at her death. Certain of her children, with others, commenced proceedings before the surrogate of the city of New York in which the original defendants took part, praying that the plaintiff be removed as trustee of the twelve-thousand-dollar trust created for the benefit of the defendant Mrs. Cohen and her issue, and account for and pay over such fund as the court might direct. In the course of that proceeding the plaintiff, as executor, for the purpose of showing that the trust fund for the children was in no jeopardy, filed in court a certificate of deposit for thirty-six thousand dollars made by the Farmers' Loan and Trust Company to him as executor, which represented funds of the estate deposited with the trust company. This amount included the trust funds for the benefit of Mrs. Cohen's two sisters and their children, as well as the twelve thousand dollars given to her and her children.

The application to remove the plaintiff was denied March 7, 1893, but he resigned so far as the three trusts for the benefit of his sisters and their children were concerned. His resignation was accepted upon his accounting for all the trust funds belonging to the trusts mentioned. The original defendants were parties to that proceeding. Upon his accounting the plaintiff credited himself with the six thousand dollars delivered to the defendants, but they and their children made and filed objections to the plaintiff's being credited with that amount, and it was disallowed by the surrogate. A decree was thereupon entered whereby the court settled the plaintiff's accounts as such trustee, and directed that the certificate of deposit for thirty-six thousand dollars be delivered to the Farmers' Loan and Trust Company, which was appointed substituted trustee as to the trust fund belonging to the plaintiff's

sisters and their children, including the fund belonging to Mrs. Cohen and her issue. Subsequently, the certificate was delivered to the substituted trustee, which accepted it on account of said trust fund. The property thus delivered belonged to the estate of the testator, and was surrendered by the plaintiff as the executor thereof.

Before the commencement of this action the plaintiff demanded of the defendants the six thousand dollars belonging to the estate which was advanced to them, with which demand they refused to comply. Judgment was demanded against Mrs. Cohen and her husband for that sum with interest from March, 1893. The foregoing is an epitome of the material facts alleged in the complaint.

The defendants demurred upon the grounds that the complaint did not state facts sufficient to constitute a cause of action; that there was an improper joinder of causes of action, to wit, one by the plaintiff individually and one by him as executor; that it did not state facts sufficient to constitute a cause of action in favor of the plaintiff individually, and that it did not state facts sufficient to constitute a cause of action in favor of the plaintiff as executor. The trial court sustained the demurrer, and the General Term has affirmed its judgment. Its validity is now challenged by the plaintiff.

We think it is quite obvious that there is no improper joinder of causes of action. The complaint stated but one cause of action, which is to recover six thousand dollars delivered by the executors to the original defendants, and for which they gave a bond to secure its proper application under the provisions of the will. That the plaintiff entitled the action as by himself individually and as surviving executor, in no way discloses a misjoinder of causes of action. There is no pretense nor allegation that the plaintiff claimed more than a single right of recovery, and that he sought to enforce as executor and for the benefit of the estate he represents. Moreover, the bond ran to the executrix and executors of the estate, and to them and each of them, severally and individually. The respondents' claim that there was a misjoinder finds no support in the

cases of *Hall* v. *Fisher* (20 Barb. 441) and *Lucas* v. *N. Y. C. R. R. Co.* (21 Barb. 245), which were cited by the court below as sustaining its decision to that effect. In each of those cases there were clearly two separate and independent causes of action — one resting in the plaintiff individually, and the other resting in him in his representative capacity. No such condition exists here. Here there is but a single cause of action upon which, if valid, the plaintiff is entitled to recover. Whether he recovers in his own name, or as representative of the estate, he can recover only one amount, and the recovery will be for the benefit of the estate to which the money belongs. (*Thompson* v. *Whitmarsh,* 100 N. Y. 35.)

This brings us to the consideration of the question whether the complaint states facts sufficient to constitute a cause of action. Both the Special and General Terms have held adversely to the plaintiff upon that question, on the ground that the cause of action set up in the complaint was upon a bond to indemnify the executors against the consequences of a contemplated *devastavit* of trust funds, which was void as against public policy, and, consequently, an action could not be maintained to enforce it.

In determining that question, the facts already stated, and such as can, by reasonable and fair intendment, be implied from them, must be regarded as admitted. Hence, the question we are called upon to determine is whether a valid cause of action is alleged or can be fairly gathered from all the averments contained in the complaint. (*Marie* v. *Garrison,* 83 N. Y. 14; *Sanders* v. *Soutter,* 126 N. Y. 195.) That the complaint in this action alleges a cause of action against the original defendants, unless the transaction between them and the executors was void, there can be no doubt.

We are unable to agree with the conclusion reached by the learned court below. While it is the duty of courts to refuse to enforce contracts which, in a proper sense, are illegal, and to leave the parties where they have unlawfully placed themselves, still, it is not every unauthorized act by a trustee or representative that draws after it a forfeiture of the right of

the beneficiary, *cestui que trust,* or even the trustee, to recover that which justly belongs to him or the estate the trustee represents.

The doctrine which has been applied in this case by the courts below has often been misapprehended, and many general statements have been made by text writers and judges which do not correctly define its extent and limitations. The contracts which courts properly refuse to enforce upon the ground of their illegality may, we think, be divided into two general classes: 1, those which are illegal under the common law; and, 2, such as are made illegal by statute. The former includes contracts which are against public policy, and comprises the most of that class. Contracts which are immoral, which impede or defeat the proper administration of the law; that are in restraint of trade, in restraint of marriage, which involve the desecration of the Sabbath, wagering contracts, and other agreements which are contrary to the established and general policy of the commonwealth or country, and which are prejudicial to the public, are included in that general class. The second class relates to acts or transactions which are expressly forbidden by statute.

It is difficult to see how it can properly be said that the act of the plaintiff and his co-representatives in endeavoring to secure peace in the family in regard to the administration of the estate of their deceased husband and father, by assuring to their sister and her family everything given them by the testator's will, was contrary to any established public policy of the state. By the term " public policy " is intended that principle of law which holds that no citizen can lawfully do that which has a tendency to injure the public or which is against the public good. (2 Beach on Modern Law of Contracts, § 1498.) No public interest was involved, nor did this contract in any way impinge upon the public good. While, in the interest of harmony and relying upon the good faith and integrity of their sister and her husband, the plaintiff and his co-executors disposed of and invested a portion of the estate in a manner not provided for by the testator's will, but con-

trary to its requirements, still, the agreement which preceded
it was not immoral, nor in conflict with any declared policy
relating to the public or any public interest.    There was noth-
ing naturally or morally evil in the transaction.    Its obvious
purpose was to pacify an exacting and dissatisfied legatee, who
threatened to involve the estate in litigation, by assuring her
and her issue their legacies, and thus to avert a costly and
unnecessary suit which would naturally deplete the estate.
We are aware of no principle of public policy which requires
this court to hold that the agreement between the original
defendants and the executors was void, simply because the lat-
ter were unauthorized to invest the funds of the estate with
the defendants, without taking a bond and mortgage to secure
their repayment.

It is not every unauthorized act of a corporation or of an
individual, especially if a trustee, that falls within the principle
upon which the judgment below was based.    This court has
several times held that a contract made by a corporation with-
out legislative sanction, and, hence, in excess of its powers,
but involving no moral turpitude and offending against no
express statute, is not illegal in such a sense as to prevent the
maintenance of an action upon it.    (*Bath Gas Light Co.* v.
*Claffy*, 151 N. Y. 24.)    In discussing the questions in that
case, ANDREWS, Ch. J., states what has already been suggested,
that the word "illegal" has often been used to describe a con-
tract which was simply unauthorized, and calls attention to
several cases where the inexact and misleading use of the word
"illegal" has been alluded to.    He also says that public policy
is promoted by the discouragement of fraud and the mainte-
nance of the obligation of contracts, unless the parties are
guilty of a public wrong.    Again, in *Bissell* v. *Mich. S. and
N. I. R. R. Co.* (22 N. Y. 258), COMSTOCK, Ch. J., in discuss-
ing the question as to what is to be regarded as illegal and
against public policy, in effect said that there was no warrant
in the cases for the proposition that mere want of authority
renders a contract illegal, and that although contracts made
without authority may be defective and may even contem-

plate a private wrong to the shareholder, yet, they are not illegal because they violate no public interest or policy, when no public interest or policy is involved, because the object of the contract is not of a public nature and only private interests would be affected by it. He also says that an agreement declared by statute to be void cannot be enforced because such is the legislative will. But when, without any such declaration, it is simply illegal, it is capable of enforcement where justice plainly requires it, and circumstances may and often do exist, which estop the offender from taking advantage of his own wrong. These cases establish quite clearly the principle that an unauthorized contract, which may be illegal in the sense that it is without authority of law, is not to be regarded so far illegal as to justify courts in refusing to enforce it. In this case, justice plainly requires the enforcement of the contract between the parties. To hold that it should not be enforced would encourage fraud and destroy the obligations of the contract. The application of the principle of those authorities to the admitted facts in this case seems to justify a recovery by the plaintiff.

But we need not rest our conclusion that the judgment below should be reversed upon those cases alone, as this court has several times in other cases established principles which, when applied to this case, require that result. Thus, in *Wetmore* v. *Porter* (92 N. Y. 76), the complaint in an action brought by an executor to recover the value or possession of certain railroad bonds, after alleging the issuing of letters testamentary to the plaintiff and his qualification, and that the bonds in question belonged to the estate, alleged in substance that the plaintiff, at the request of the defendant, who was his partner in business, and who knew that the bonds were trust funds, pledged the same as security for loans made to the firm ; that the firm had funds sufficient to pay the debt, and the defendant was largely indebted to the plaintiff, yet that the defendant, without the knowledge or consent of the plaintiff, procured the pledgee to sell the bonds and the proceeds were applied to the payment of the firm debt, and that the bonds

came into the custody and control of the defendant, who refused to return them or to pay their value. Upon demurrer it was held that the complaint set forth a good cause of action; that it was no defense to an action brought by an executor, as such, to recover assets of the estate in the hands of the defendant, or for the conversion thereof, that the plaintiff, in his individual capacity, acted in collusion with the defendant in despoiling the estate, and that whoever received property, knowing it to be the subject of a trust, and that it had been transferred by the trustee in violation of his duty or power, took it subject to the right, not only of the *cestui que trust*, but also of the trustee, to reclaim possession or recover for its conversion.

So, too, in *Lee* v. *Horton* (104 N. Y. 538, 541) the defendant's intestate executed to the executors of a testator two written instruments, by which he promised to pay to them as such executors at his death, if he died without heirs, a sum specified, which the instrument described as a fund held by the executors in trust, in which the defendant's intestate had a life estate, with remainder over to his heirs. The intestate died leaving an heir. An action was brought against his personal representative to recover the sum specified. Upon appeal to this court it was held that as the condition in the instruments, if carried out, would cause the fund to fall into the estate of the defendant's intestate, subject to administration, it would result in an unlawful disposition of the money, and so it was illegal and void, but that the money was repayable upon the death of Horton, irrespective of the question whether he left heirs or not, and that the plaintiff was entitled to recover. In discussing the question of the illegality of that contract, Ruger, Ch. J., said: "Any agreement, therefore, by the executors to alienate the trust funds would be illegal, not because it would be immoral or contrary to public policy, but simply because they were wholly unauthorized to make it. * * * The note describes the money as being a fund held by the plaintiffs in trust, in which Horton had a life estate, with remainder over to Horton's heirs.

Upon Horton's death the duty of paying this sum to the remaindermen devolved upon the plaintiffs, and they could not, by virtue of any contract between themselves and Horton, become discharged from its performance. Neither could Horton acquire any title to such moneys by agreement with the plaintiffs. All of the parties dealt with the fund knowing it to be the subject of a trust and incapable of alienation, and that its trust character followed it into the hands of any person receiving it with knowledge of the facts. The executors had authority, upon receiving satisfactory security for its return, to deliver possession of the money to the life tenant for the duration of his life, and so far the contract was valid, but this was the extent of their power over it. * * * The condition inserted that the money was not to be repaid in the event of the life tenant leaving issue him surviving was clearly illegal, and in law impossible of performance, and could not be set up as a defense against an action by the executors to recover possession of the trust fund."

Again, in *Zimmerman* v. *Kinkle* (108 N. Y. 282, 287) which was an action brought by the plaintiffs as executors to recover trust moneys which they had, without authority, placed in the hands of the defendant for a purpose inconsistent with their trust, this court held that as against the defendant the plaintiffs were entitled to recover the trust moneys thus delivered to him, and that he, having known the money to be the subject of a trust, and to have been transferred by the plaintiffs in violation of their duties as trustees, took it subject to the right, not only of the *cestui que trust*, but of the trustees to reclaim possession. In that case it was said : " They (the plaintiffs) came into court as executors of a deceased person and in a representative character. If *in delicto* at all, they are not *in pari delicto*, and the enforcement of the rule would secure to the defendant the enjoyment of money which never belonged to his principals, and which did belong to the estate in the honest management of which the plaintiffs also owed a duty to the testator's beneficiaries. Nor should the defendant be heard to complain of this. He

admits by his demurrer that the money was trust money and that he received it from the plaintiffs as executors and trustees. They had no power to part with it for the purpose for which he received it, and in seeking to recover it back they are merely performing a duty in the execution of which a court of equity may properly assist."

In *Deobold* v. *Oppermann* (111 N. Y. 531), where moneys of an estate were delivered by an administrator to the sureties upon his bond, upon an agreement with them that they should retain them until they were discharged from liability upon the bond, with authority to use the proceeds in their business, they paying interest, it was held that such a contract was invalid, gave the sureties no right to retain the funds received, and that an action could be maintained against them by the administrator to reclaim the funds in case of a refusal to pay them over.

The courts below have held that these authorities have no application to the case at bar, and have sought to distinguish them. We can perceive no well-grounded distinction between the principles of the cases cited and those involved in this case, but are of the opinion that they are applicable and decisive of it.

Nor do we think the fact that the plaintiff was required to deposit other assets of the estate with the substituted trustee in place of the debt owing to the estate by the defendants, in any way changes their liability. They had six thousand dollars which belonged to the estate and ultimately to other beneficiaries under the testator's will. They not only refused to repay it, but objected to its allowance in the plaintiff's account before the surrogate, and now seek to hold it, although it is the property of the estate and justly belongs to the beneficiaries under the testator's will. Justice plainly requires the enforcement of its payment. Therefore, whether the action be regarded as one to recover for money loaned or advanced by the estate to the defendants, or to recover money illegally disposed of by the executors, or to recover upon the defendants' promise to return it to the estate or legatees, it is

clear that under the authorities cited the action can and should be maintained.

The suggestion by the court below, that the act of the execu-tors in advancing to the defendants a portion of the fund belonging to them and their children, and taking their bond as security for repayment to the executors or the persons entitled to it under the will, amounted to a larceny under sub-division two of section 528 of the Penal Code, and, hence, was illegal, cannot, we think, be upheld. Indeed, it is so manifest that the statute has no application to the transaction under consideration that the suggestion may be properly dismissed by the mere statement that in our opinion that view of the effect of the Penal Code is entirely without foundation.

The judgment should be reversed, with costs, the defend-ants' demurrer overruled, and judgment ordered for the plain-tiff, with costs.

All concur, except VANN, J., not voting.

Judgment accordingly.