(68 Misc. Rep. 159.)

### WARREN et al. v. BOUVIER et al.

(Supreme Court, Trial Term, Rensselaer County. August 13, 1910.)

**1. WILLS (§ 742\*)—SALE OF ASSETS SPECIFICALLY DEVISED.**

Where testator bequeathed a collection of porcelain to his widow for life, remainder to a son, who was also one of his executors, a sale of the porcelains by the remainderman, with the consent of the life tenant, within a year from the date of the probate of the will, at which time there had been no settlement of the testator's estate, was improper, under Code Civ. Proc. § 2721, providing that after the expiration of one year the executor or administrator must discharge the specific legacies bequeathed by the will.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 742.\*]

**2. CONTRACTS (§ 108\*)—VALIDITY—"PUBLIC POLICY."**

Testator bequeathed a collection of porcelains to his widow for life, remainder to his son, who was one of his executors, with the request that the collection be kept intact as a memorial of testator. Within a year after the probate of the will, the remainderman, by importuning the widow, obtained her consent to a sale of the porcelains on his agreement that she should have the income from the proceeds for life, and that the remainder should be distributed at her death according to the will. This he did not do, however, but converted the proceeds to his own use. *Held,* that the widow's interest in the collection was not sentimental only, and that, though the contract under which the sale was agreed to was without authority on the part of the executors, it was nevertheless not contrary to "public policy," which only includes those things having a tendency to injure the public, or which are contrary to the public good, and hence was enforceable against the remainderman's estate.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 108.\*

For other definitions, see Words and Phrases, vol. 6, pp. 5813–5814; vol. 8, p. 7773.]

Action by Ogle T. Warren and another, as surviving executors of the last will of George B. Warren, deceased, against John Vernou Bouvier, Jr., and others, as executors, etc., of G. Thornton Warren, deceased. Judgment for plaintiffs.

Shaw, Bailey & Murphy, for plaintiffs.
James, Schell & Elkus, for defendants.

BETTS, J. George B. Warren duly made and executed his last will and testament, dated October 23, 1901, and died October 8, 1905. His will was admitted to probate October 14, 1905. The will appointed his three sons, Ogle Taylor Warren, George Thornton Warren, and Eugene Warren, the executors thereof, and letters testamentary thereon were subsequently issued to them. The first clause of the will, after the one providing for the payment of debts and funeral charges, is as follows:

"Item. I give and bequeath to my son George Thornton Warren my entire collection of Chinese porcelains now in my residence in the city of Troy, together with such cabinets and cases as may contain the same, subject, however, to a life estate therein by my wife, Eugenia Phebe Warren, provided she survives me, with the request but not as a condition or provision thereto that the said collection be kept intact as a memorial of me."

It is concerning action taken under this clause of the will, or rights accruing therefrom, with which this action has to deal. The porce-

lains are described in the will as being in testator's residence in the city of Troy. While the evidence might be clearer, yet I gather from it that the porcelains remained in such residence, where the widow and son Eugene lived, until some time in 'the following spring, probably in April, 1906, at any event before May 2, 1906, when they were removed therefrom by G. Thornton Warren, the defendant's testator, the remainderman under the clause quoted of the will of .George B. Warren, and one of the executors thereof, taken to New York with the consent of the life tenant, his mother, and of the other executors of George B. Warren's will (such consent being qualified and conditioned on the part of both the life tenant and the remaining executors), and disposed of by said G. Thornton Warren, the said remainderman and one of the executors, to Duveen Bros., in said city, on May 2, 1906, for $65,000. It is claimed on behalf of the plaintiffs that these porcelains were committed to this remainderman and executor by his coexecutors for sale only upon his agreement that the proceeds thereof should be turned over to the executors, and the income therefrom paid to Mrs. Eugenia Phebe Warren during her lifetime, and upon her death the same to be disposed of by the said executors in accordance with the terms of the will. .This Mr. G. Thornton Warren did not do. He invested a portion of the proceeds in certain stocks, which he took in his own name individually, and not in the name of the estate, or of his mother, and sent them later to either his mother or the executors, and afterwards on some pretext obtained that portion of the stocks represented by the certificate of the Southern Pacific Company and used for his own benefit the proceeds of the sale of that stock.

This action is now brought by the executors of George B. Warren to recover from the defendants the difference between the value of the stock surrendered to the life tenant, or the executors, or both, by G. Thornton Warren, and the $65,000, with interest, and for a direction by the court that the stocks now held shall be transferred to the executors, the whole to be proceeded with in the due course of administration. It will be seen that this sale by this G. Thornton Warren, the remainderman and one of the executors, was within one year from the date of the probate of the will of George B. Warren. Section 2721 of the Code of Civil Procedure provides as follows:

"After the expiration of one year, the executors or administrators must discharge the specific legacies bequeathed by the will.  *  *  *"

It does not appear that there had been any settlement of the estate of George B. Warren at the time of this sale of these porcelains by one of the executors, nor could there be under the provisions of the statutes, as one year had not elapsed. Matter of Bronner, 30 Misc. Rep. 31, 62 N. Y. Supp. 1003; Matter of Stanton, 41 Misc. Rep. 278, 84 N. Y. Supp. 46. It does not appear that any receipt or release was given by either the life tenant or the remainderman for these porcelains to the executors, or that they were surrendered in due course of administration. It rather appears that upon the ingenious argument of this deceased executor, G. Thornton Warren, to his mother, the life tenant, that if the porcelains were given to her and permitted to remain in her custody she would be put to certain charges for caring for

same and insuring the same, and liable for damages to him if any of them were injured, and on his agreement as above, that they were permitted to be sold by him.

The claim is now made by the defendants, first, because a different disposition was made of these porcelains from that provided for their disposal by the will of George B. Warren, that therefore the executors are without any further power or authority in the premises, and that any contract or agreement made between these surviving executors, the life tenant, and G. Thornton Warren, or between the executors of George B. Warren and G. Thornton Warren, is now incapable of enforcement, because the executors had no authority under the will to make any such contract; and, second, that the use which the life tenant could make of these porcelains was a sentimental one only, was of no value to her, but would be a charge, and therefore she has lost nothing, but has been a gainer by being relieved of the care, custody, and expense of these porcelains during her lifetime, and therefore she can make no claim against these executors.

As to the latter contention first: George B. Warren knew his son and wife much better than the court or the parties here do or could. He knew her artistic tastes. The court will not consider that he intended to place a burden upon his wife by his will for her lifetime, but will rather assume that he intended and conferred a benefit. Neither will the court assume that the satisfaction and pleasure to be derived by Eugenia Phebe Warren from the contemplation and enjoyment of these porcelains, the collection of many years by her husband, were not equal in value to her to the income that might be derived from the value of these porcelains properly invested. Nor is the court called upon to aid the representatives of the remainderman in thus taking from the possession and enjoyment of this life tenant by her son the provision which his father and her husband had made for her during her lifetime. All benefits derived by legatees or bequeathed by testators cannot be measured in dollars and cents. Nor is the court disposed to place that sordid value only upon this bequest of George B. Warren to his wife.

Now, as to the first contention, that having made an unauthorized distribution of these porcelains, the executors are without remedy to recover them, or, having made an unauthorized contract, the executors are incapable of enforcing that contract: I think that the principle laid down in Moss v. Cohen, 158 N. Y. 240, 53 N. E. 8, and the cases therein cited and approved, is ample warrant for the maintenance and enforcement of the rights claimed by the plaintiffs in this action. In that case one Moss had died leaving a will, and appointed executors thereof, which will was offered for probate, and on the probate thereof objection was made by a daughter, one of the heirs at law and legatees of the deceased, who was to receive the income of $12,000 during her lifetime, after the death of her mother, the first life tenant, and upon the daughter's death the remainder was to go to her children, the grandchildren of the deceased. The objection raised was that the contestant did not regard the provision made for herself and her children sufficiently assured to her and them under the will. Whereupon, upon consideration of this daughter making no contest,

the executors named in the will, for the purpose of assuring the application of the $12,000 and the income thereof to the benefit of her and her children as provided in the will, agreed to pay over to this contesting daughter the sum of $6,000 from the funds of the estate and to receive therefor her and her husband's bond for the application of that sum to the use of her and her children according to the terms of the will, and to give a mortgage for the remaining $6,000 upon real property belonging to the estate for the purpose of securing the application by the executors of the remainder of said sum to the use of Mrs. Cohen and her children. The agreement was carried out, the will admitted to probate, and the daughter and her husband carried out their part of the agreement. Here was an agreement, made and acted on, which the executors clearly had no authority whatever from the will or otherwise to make. Upon the death of the first life tenant the executors, seeking to recover the $6,000, were met, as here, with the defense that no recovery could be had, because there was no authority for the action or contract made by the executors. This contention was brushed aside by the Court of Appeals, which said:

"It is difficult to see how it can properly be said that the act of the plaintiff and his corepresentatives in endeavoring to secure peace in the family in regard to the administration of the estate of their deceased husband and father, by assuring to their sister and her family everything given them by the testator's will, was contrary to any established public policy of the state. By the term 'public policy' is intended that principle of law which holds that no citizen can lawfully do that which has a tendency to injure the public or which is against the public good. 2 Beach on Modern Law of Contracts, § 1498. No public interest was involved, nor did this contract in any way impinge upon the public good. While, in the interest of harmony and relying upon the good faith and integrity of their sister and her husband, the plaintiff and his coexecutors disposed of and invested a portion of the estate in a manner not provided for by the testator's will, but contrary to its requirements, still the agreement which preceded it was not immoral, nor in conflict with any declared policy relating to the public or any public interest. There was nothing naturally or morally evil in the transaction. Its obvious purpose was to pacify an exacting and dissatisfied legatee, who threatened to involve the estate in litigation, by assuring her and her issue their legacies, and thus to avert a costly and unnecessary suit, which would naturally deplete the estate. We are aware of no principle of public policy which requires this court to hold that the agreement between the original defendants and the executors was void, simply because the latter were unauthorized to invest the funds of the estate with the defendants, without taking a bond and mortgage to secure their repayment."

After referring to several prior decisions of that court, the court continues:

"These cases establish quite clearly the principle that an unauthorized contract, which may be illegal in the sense that it is without authority of law, is not to be regarded so far illegal as to justify courts in refusing to enforce it. In this case justice plainly requires the enforcement of the contract between the parties. To hold that it should not be enforced would encourage fraud and destroy the obligations of the contract. The application of the principle of those authorities to the admitted facts in this case seems to justify a recovery by the plaintiff."

Assume that in this case the court does not enforce this contract, or that it does not direct restitution to this estate of funds or property taken therefrom by one of the executors and not returned during his

liietime. The life tenant has lost not only the enjoyment of the valuable porcelains that were given her by her husand, but has nothing whatever in the place thereof. Mrs. Warren yielded to the importunities of her son, the remainderman and one of the executors, for the sake of quieting him, and he apparently at the same time, by his written confessions or statements, endeavored to deceive her as to the disposition he had made of the proceeds of these porcelains and his own financial condition; and the executors consented, in order so far as they might to keep peace in the family and quiet the importunities of the son and coexecutor, and permitted him to turn these porcelains into cash, relying on his promises and agreements. The failure of G. Thornton Warren to carry out his agreement has caused a condition which requires the intervention of the court to restore as far as possible to this widow and life tenant that which her husband intended for her enjoyment and of which her son has deprived her. I think the plaintiffs should recover.

Findings may be submitted on behalf of the plaintiffs in accordance herewith, and judgment entered thereon, with costs.