(174 App. Div. 724)

### HANMER et al. v. WELLS FARGO & CO. EXPRESS.

(Supreme Court, Appellate Division, Fourth Department.   April 19, 1916.)

REWARDS ⬅⟹11—WHO MAY RECEIVE—POLICEMEN—"PUBLIC POLICY."

    Irrespective of the application of Penal Law (Consol. Laws, c. 40) § 1826, making it a felony for a public officer to receive a gratuity or reward for performing his duty as such, police officers cannot validly claim a reward from an express company under its standing offer of $300 for arrest and conviction of any person robbing it, although such offer did not except police officers, and although, with the thought of the reward in their minds, on their own initiative, and while not on duty, they have arrested such robber and he has been convicted; such arrest being in the discharge of their official duty.

    [Ed. Note.—For other cases, see Rewards, Cent. Dig. §§ 14, 15; Dec. Dig. ⬅⟹11.]

    Merrell, J., dissenting.

Appeal from Steuben County Court.

Action by Charles G. Hanmer and Raymond H. Brooder against the Wells Fargo & Co. Express. From a judgment of the County Court of Steuben County, affirming a judgment of the Corning City Court for plaintiffs, defendant appeals. Reversed, and plaintiffs' complaint dismissed.

The following is the opinion of Cheney, J., in the County Court:

This appeal is taken from the judgment rendered in Corning City Court in favor of the respondents for $316.20 damages and $21 cost, amounting in all to $337.20.

The facts in this case are practically undisputed.

The defendant is an express company, engaged in the general express business transporting property for hire over and through many states of the United States and in particular within the state of New York, and over and upon lines of the Erie Railroad Company and during all of the times mentioned in the complaint had an office for the general transaction of business at the city of Corning, N. Y.

That prior to the commission of the crime hereinafter referred to said defendant had made and caused to be generally advertised and posted at its various express offices and particularly had advertised and posted in the city of Corning a notice of a standing reward. That said offer of reward so far as the same applies to this action was as follows:

"Reward.

"$300.00 Standing Reward.

"Highway Robbery.

"This company will pay $300.00 reward for the arrest and conviction for felony of each person guilty of robbery wherein property in its custody is taken by force from any driver, messenger or other person in its employ. One reward only will be paid for the arrest and conviction of each person. This is in addition to any reward offered by the public authorities."

On the 23d of February, 1914, and while the said standing reward was in full force and effect, Harry Edwards, one of the defendant's employés at the city of Corning, N. Y., was murdered by David Dunn at the defendant's office in the city of Corning, N. Y. At the time of the murder Dunn was at-

tempting to rob defendant's office, and at that time Dunn did, in fact, steal and carry away from the defendant's said office two revolvers, the property of the defendant.

At the time of the commission of said crime both plaintiffs were members of the Corning police force, were members of the paid police department of the city of Corning, and were paid a monthly salary or compensation under the provisions of the charter of the city of Corning. Neither of the plaintiffs were paid any fees or received any compensation from the city of Corning, except for their necessary disbursements, while in the performance of their duties, other than their monthly salary.

Neither of the plaintiffs was present at the time of the commission of the crime, and neither of them had received from any person any information pointing to or suggesting Dunn as the probable perpetrator of the crime. Neither of them had been ordered to arrest Dunn, and neither of them had received from any superior officer or other person any order, instruction, or direction whatsoever which aided or assisted in the arrest and conviction of Dunn.

At the time of the commission of the crime, the plaintiff Hanmer was not on duty. He was at home. The plaintiff Brooder was on duty on another beat from that in which the express office where the crime was committed is located. Hanmer was called, and in a conversation over the telephone was told by the captain of police to search the Erie and Central freightyards with Officers Orr and Brooder. After that had been done Hanmer again communicated with the captain, and was told to take the 5 o'clock Rochester division train up to Painted Post and to search up that way and come back. That was done, and Hanmer returned at about 6:30 o'clock in the morning. Officer Brooder was told to go to the Wells Fargo office at about 3 o'clock. He did so, and had carried out all the general instructions given him until about 6:30 o'clock, when Officer Hanmer returned from Painted Post. At that time they met and continued together, acting on their own initiative up to the time of Dunn's arrest. So far as appears from the evidence, both officers had done everything required of them by any order or direction of any superior officer at 6:30 o'clock. Brooder's hours of service ended at 4 o'clock, Hanmer was not regularly on duty at all, and, while under the rules they were both subject to call at any time, they had both observed the rule, and there is nothing in the evidence to indicate that' at 6:30 o'clock they were under any further direction or instructions from any superior officer, or to indicate that they could not, with propriety, have reported off duty at that time. The plaintiffs, while conversing about the crime, soon after 6:30 o'clock became convinced that Dunn might know something of the crime. They went together to his boarding house, and there found Dunn, and also found unmistakable evidence that he was the person who committed the crime, and found the two revolvers stolen by Dunn. They placed Dunn under arrest. He was indicted and convicted of the crime of murder in the first degree, and that conviction has been affirmed by the Court of Appeals, and the sentence carried into effect, although the affirmance does not appear as a matter of record in the return on this appeal.

There is no question but what the plaintiffs were, at the time of making the arrest, police officers, members of the paid police department of the city of Corning, and public officers. They had each taken the constitutional oath of office, and were under the direction of their superior officers, and under the rules of the police department were liable to be called upon at any time of the day or night to perform their duties.

There is no question but what on the night in question each of the plaintiffs acted with great bravery and showed unusual ability. as patrolmen in their acts which led up to the arrest of Dunn. There is no question but what the arrest of Dunn at the time in question was accomplished by the plaintiffs acting solely upon their own initiative. They had no warrant for the arrest of Dunn or any other person; and the arrest of Dunn was brought about solely by the zeal, intelligence, and bravery shown by the plaintiffs upon the night in question.

There is no question of any person other than the plaintiffs being entitled to any part of the reward offered by the defendant. Practically the only question presented upon this appeal is whether or not the plaintiffs are stopped from receiving the reward offered by the defendant upon the sole ground that at the time of making the arrest they were members of the police force of the city of Corning. Each of the plaintiffs admits that in doing what he did, in making the arrest of Dunn, he did only what he would have done had no reward been offered, although each claims to have known of the standing reward offered by the defendant, and each claims that the thought of that reward was in his mind at the time he was engaged in ferretting out the crime and arresting Dunn.

There is no question but what, as a general proposition, the courts of this state, of the United States, and of most, if not all, the states have held that it is against public policy to allow a police officer or constable, who receives fees or compensation as a public officer, from receiving or sharing in a reward offered for the arrest and conviction of a person charged with a crime. The reason of such public policy is not hard to find. It is forcibly pointed out in appellant's brief in the following language: "Public officers such as policemen, constables, etc., are under a special duty at all times, because of the nature of their employment, to use their best efforts to apprehend criminals, as was said in Kick v. Merry, 23 Mo. 72 [66 Am. Dec. 658]. The services rendered were within the duties of their office. All their energies had been devoted to the service of the city. Under such circumstances, to permit an officer to stipulate for or receive extra compensation for services to which the public was entitled would lead to great corruption and oppression in office. It would follow that whenever a crime was committed, instead of speedy efforts for the arrest of the defender, there would be a holding back in the hope that there would be a reward offered for his apprehension. If once a habit of taking a reward is introduced, nothing will be done unless the service is previously purchased by or the promise of extra pay."

This reasoning, however, loses all of its force when applied to the case at bar. The standing reward upon which this action is based was an agreement to pay $300 reward for the arrest and conviction for felony of each person guilty of robbery wherein the property in defendant's custody was taken by force from any person in its employ. There is nothing in a general standing reward of this kind that could, by any possible reasoning, result in a "holding back" by a police officer in the hope that he would thereby reap a reward.

If the defendant company had been in the habit, after the commission of any crime, of offering a reward for that specific crime and such custom became known, then it might be stated that a police officer would hold back and wait for the offer of a reward before taking active steps to arrest the perpetrator of a crime for whose arrest he might anticipate there would be a reward offered. The standing reward under which these plaintiffs seek to recover is in character like the reward offered by the United States government for the detention and return of the deserters from the army and navy, or like the reward offered by certain penal institutions for the return thereto of an escaped convict. It is common knowledge that rewards of that nature are paid to police officers by the United States government and by different institutions within our own state, and the offer of such a reward and the payment thereof to a police officer has never been held, so far as I can discover, to be against public policy.

None of the New York cases to which my attention has been called bear any close resemblance to the case at bar.

In Hatch v. Mann, 15 Wend. 49, a constable was applied to by a creditor to arrest his debtor. The constable at first declined, but, upon a promise being made that he would be well paid, undertook the services and made the arrest. The compensation to which the constable was entitled was fixed by law. The constable sued to recover an additional compensation to that fixed by law. He was not entitled to recover such additional compensation, and the mischief that might result if such a practice were allowed is forcibly pointed out in the opinion in that case. It does not seem to me however, that the language of

that opinion applies to the case at bar. In many of the other cases cited by appellant a constable or police officer was held not entitled to recover the reward sought because of the fact that as such constable or police officer he was carrying out an order of a superior, or serving a warrant or doing some act that he was not only authorized to do, but was called upon to do by virtue of his office. If the plaintiffs in this case had been given a warrant for Dunn's arrest, if they had been told to arrest Dunn, if they had been told that Dunn was under suspicion and to look him up, then under the authority of the cases cited by appellant, there is no question but what they would not have been entitled to the reward offered. What they did at the time of Dunn's arrest could have been done equally well by them had they not been police officers. A felony having been committed and any person, whether a police officer or not, upon discovering in Dunn's room evidence tending to convict him of the commission of the crime would have had the right to place Dunn under arrest. In a certain sense they were not acting as public officials, although they were at the time drawing a salary as police officers. Under the particular circumstances of this case I cannot see that it is against public policy to allow the plaintiffs to recover the reward offered by the defendant. The defendant saw fit to offer this standing reward. It saw fit to offer that reward without making any exceptions as to the persons who were entitled to receive it. In posting that standing reward the defendant expected that its office and property would receive increased attention, and on that account additional protection from members of the police forces of the various villages and cities in which the offer was posted. It is not right, and there is no justice or equity in allowing the defendant to advertise a standing reward of this character with no limitations as to the persons entitled to benefit by it, hoping thereby to receive for itself some benefit in the way of additional protection, and then, when every condition of the offered reward has been complied with, to refuse payment on the ground that it is against public policy for the person who has earned the reward to receive it. An attempt to evade payment of a just claim by the contention that the contract under which the claim was made is void because against public policy should not be allowed to succeed for the purpose of protecting the defendant.

Unless the mere fact that the plaintiffs are police officers is in itself sufficient reason for reversing the judgment on the ground that it is against public policy to allow them to recover, then this judgment should be affirmed. "By the term 'public policy' is intended that principal of law which holds that no citizen can lawfully do that which has a tendency to injure the public or which is against the public good." Moss v. Cohen, 158 N. Y. 240, 53 N. E. 8.

In deciding contracts void as against public policy, every case must necessarily depend largely upon the facts in that particular case.

In Gregg v. Pierce, 53 Barb. 387, it was held that, although the plaintiff was sheriff, and that the requisition upon the Governor of Illinois described him as sheriff, in doing what he did to earn the reward, the plaintiff was not acting as sheriff; that he could have done what he did to earn the reward had he not been sheriff. The plaintiffs in the case at bar did nothing at the time of their arrest of Dunn that could not have been done by them as private individuals.

I am not prepared to say that the mere fact that these plaintiffs were police officers at the time they arrested Dunn is sufficient grounds, in and of itself, to prevent them from recovering the standing reward offered by the defendant. Every condition in the contract, the terms of which were fixed by the defendant itself has been complied with. The standing reward was made by the defendant without conditions. The contract, so far as these plaintiffs are concerned, should not be held void as to public policy for the sake of benefiting the defendant. It should only be held so void if under the circumstances of this particular case the recovery of this reward by these plaintiffs would have a tendency to injure the public or work against the public good.

Under the circumstances of this case I do not believe that public policy requires the reversal of the judgment.

The judgment is therefore affirmed.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MER-RELL, and DE ANGELIS, JJ.

Raymond F. Nichols, Stanchfield, Lovell, Falck & Sayles, all of Elmira, for appellant.

James O. Sebring and Leslie W. Wellington, both of Corning, for respondents.

PER CURIAM. It is unnecessary that we should decide whether section 1826 of the Penal Law, making it a felony for a public offi-cer to receive a gratuity or reward for performing his duty as such, is applicable to the present case, as contended by appellant's counsel, as we are of opinion that, by the great weight of authority, plaintiffs are not entitled to recover the reward in question, inasmuch as all that was done by plaintiffs in apprehending and arresting the guilty per-son for whose arrest the reward was offered was done by them in the discharge of their duty as police officers of the city of Corning, and it is against public policy that they should be permitted to recover the reward for doing only what it was their duty to do, and also that the supposed promise to pay them the reward was without consideration and void.

The judgments of the County Court and of the City Court should be reversed, with costs to the defendant, and plaintiffs' complaint dis-missed with costs.

Judgment of County Court and judgment of City Court reversed, with costs. All concur, except MERRELL, J., who dissents upon the grounds stated in the opinion of the County Court.