THEODORE C. ENGLISH, as Trustee, Substituted for ISAAC H. WILLIAMSON, as Trustee under the Last Will and Testament of BENJAMIN WILLIAMSON, Deceased, Appellant and Respondent, *v.* THOMAS A. McINTYRE and Others, Respondents and Appellants.

*Testamentary trustee — speculation with trust funds — action in equity to recover the trust funds — reference to secure delivery of unconverted securities and to take an account of those converted — right to profits on particular transactions.*

Where a trustee has speculated with trust funds through a broker, with whom the trust securities have been deposited as a margin to protect the speculations, in which they have been lost, the broker having both constructive and actual notice that the securities thus deposited were held by his customer in his capacity as trustee, and that the use made thereof was in violation of the trust, a substituted trustee may either maintain an action at law against the broker, as for a conversion of the trust funds by the broker, or may bring an action in equity to compel the broker, so far as he has in his possession the identical stocks and bonds received from the former trustee, to transfer them to the new trustee, and, so far as such trust securities have been sold, to account for any dividends received therefrom, as well as for their value.

In the latter case the court may appoint a referee, under whose direction the securities not disposed of shall be turned over to the new trustee, and before whom the broker shall be required to account for the interest or dividends which he has received, and by whom the amount necessary to make good the trust estate may be ascertained and adjudged.

Although the will creating the trust expressly gives to the trustee entire discretion as to the time, amount and character of his expenses for the trust and makes him the residuary legatee of the trust fund absolutely in case of the death of the *cestui que trust* while he lives, the expenditures made by him must be made for the benefit of the trust, and he is not authorized to use the fund for speculative adventures.

Where a trust fund has been thus used in speculation, and there has been no setting apart of a portion of the trust fund, and using that part to make any particular investment, so that the use of one portion has resulted in a profit, and of another in a loss, but the trust securities have been delivered to the broker to secure him generally for investments made, the substituted trustee cannot insist upon taking profits wherever a single transaction has resulted in a profit and escape liability for the losses.

The case is analogous to one in which a trustee has engaged with the trust fund in an unauthorized business where the *cestui que trust* may ratify the transactions of the trustee and take the profits, if there are profits, or he may at his election take back the fund and the interest thereon, or the dividends which have accrued from the securities which constituted the fund, but he cannot take both.

CROSS-APPEALS by the plaintiff, Theodore C. English, as trustee, substituted for Isaac H. Williamson as trustee under the last will and testament of Benjamin Williamson, deceased, from a portion of, and by the defendants, Thomas A. McIntyre and others, from the whole of, an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of December, 1897, upon the decision of the court rendered after a trial at the New York Special Term.

The defendants' notice of appeal states that the defendants "appeal from the order heretofore made herein on the 14th day of October, 1896, which order denied the defendants' motion requiring the plaintiff to amend his complaint herein," but such order does not appear in the case on appeal.

*Henry Wynans Jessup*, for the plaintiff.

*John M. Bowers*, for the defendants.

Rumsey, J. :

Benjamin Williamson, late chancellor of the State of New Jersey, died in that State about the 1st of December, 1892, having before then made a will and several codicils, which were admitted to probate in the Orphan's Court of that State. Among other bequests made by Chancellor Williamson in his will was one contained in the 11th clause, by which he divided all the residue and remainder of his personal property into three shares, one of which was given to his son Isaac, in trust for the education, support and maintenance of his children Lelia and Benjamin, and the survivors of them, the expenditures to be made by the trustee at his entire and sole discretion as to time, amount and character. The clause further contains a provision bequeathing the trust fund over absolutely, upon the happening of certain conditions which are not material to consider here. In the early part of the year 1894 the executors of Benjamin Williamson, acting under this clause of the will, set apart certain securities, of a par value of something over $50,000, which were made out to Isaac Williamson, as trustee under the will of Benjamin Williamson, and in that condition were delivered to Isaac Williamson, who took them as trustee under the 11th clause of his father's will. In the latter part of the year 1894 Isaac Williamson saw fit to enter into a series of stock speculations with the defendants, who were brokers doing business in the city of New York under the name of McIntyre & Wardwell. These speculations were entered into by him as " trustee," and as margins to secure McIntyre & Wardwell for the purchase of stocks and other articles which he directed to be bought from time to time, he delivered to them all or by far the greater portion of the securities which he had received as trustee for his two children. In the usual course of events the losses upon the speculations were so great that the defendants absorbed all the securities, and between the trustee on the one hand and the brokers on the other the trust estate of the personal property was totally destroyed and the trustee became entirely insolvent. After that condition of affairs had become known, the plaintiff, who was the general guardian of one of the children, a *cestui que trust*, under the 11th clause of the will, began proceedings in the Orphan's Court of New Jersey to procure the removal

of Williamson, as trustee under this clause of the will, and such proceedings were had in that court that Williamson, was removed as trustee and the plaintiff was appointed in his place and was vested with all the powers which, by the will, had been given to Isaac Williamson. The plaintiff, after his appointment, demanded of the defendants the securities which they as brokers had received from Isaac Williamson, and upon that demand being refused brought this action to procure a delivery to him of the securities and an accounting of the dividends and interest received for them, or for such other relief as he might be entitled to. Upon the trial it was substantially conceded that these securities were deposited with the defendants by Williamson to be used as margins to protect speculations which they made upon his order from time to time. It was conceded, also, that these speculations were made by him as trustee, and that the defendants had notice, not only constructive but actual, that the securities which were delivered to them as margins upon these speculations were held by Williamson in his capacity as trustee, and necessarily, also, that the use of them by Williamson for the purpose for which they were delivered to the defendants was a violation of his trust and one which he had no right to make. The defendants did not dispute these facts, nor, as we understand it, do they seriously dispute the legal conclusions which result from them ; but having been defeated in the action and required to account for the securities which they had received from Williamson, they attack the correctness of the judgment on various grounds, none of which, however, questions seriously their liability to account to somebody for the securities which they have received.

The first point made by the defendants is that the plaintiff had a complete and adequate remedy at law and, therefore, that this action could not be maintained upon the equity side of the court and it should not have been tried at Special Term. This point was sufficiently raised in various ways. The defendants pleaded in their answer that the plaintiff had a complete and adequate remedy at law, and when the case was moved for trial at the Special Term they, by their counsel, demanded a trial by jury at the very first opportunity, so that they are in a situation to rely upon the point which they have made if there was anything in it. But we are clear upon principle and authority that the point has no validity.

There is no doubt that the action of Williamson in transferring these securities to the defendants, and the action of the defendants in receiving them, was a violation of the terms of the trust; and after the appointment of the plaintiff in Williamson's place and his demand from the defendants of the securities he might, if he had seen fit, have regarded that demand and refusal as a conversion, as it undoubtedly was, and have brought this action against the defendants for damages. But that was not his only remedy. From the very earliest day it has been held that, where a trustee had misappropriated the trust estate, the *cestui que trusts* or a substituted trustee were not confined to the legal remedy by an action for damages against those who had illegally taken the trust estate, but might maintain an action in equity for a judgment requiring the property taken to be returned to the possession of the trustee and compelling the wrongdoers to account for the interest and profits which they had received. (*Wetmore* v. *Porter*, 92 N. Y. 76; *Newton* v. *Porter*, 69 id. 133; *Holmes* v. *Gilman*, 138 id. 369; *Marshall* v. *de Cordova*, 26 App. Div. 615.) These are but a few of the large number of cases which might be cited to establish the right of the plaintiff to maintain this action upon the equity side of the court. (See, also, *Johnson* v. *Brooks*, 93 N. Y. 337, 343.) It cannot be said as an undoubted proposition of law that damages would be a full and complete and adequate remedy to the plaintiff by way of restoring this trust estate. So far as the defendants still have in their possession the identical stocks and bonds which they received from Williamson, the plaintiff is undoubtedly entitled to have those particular securities transferred to him because they are his, and the defendants will not be permitted to exercise any preference which they may have to keep the possession of those stocks and pay the plaintiff their value. The plaintiff is entitled to the identical securities, the title to which never passed from Williamson to the defendants. So if the defendants have sold any of those stocks, the plaintiff is entitled to an accounting for any dividends they may have received from them, as well as to their value; and these remedies can only be completely given by an action in equity in which a reference can be had and the precise relief to which the plaintiff is entitled given to him. This conclusion disposes substantially of another point made by the defendants, that the court had no power to order a reference. The

court undoubtedly had power to direct that the particular securities which Williamson turned over to these defendants should be delivered by them to the plaintiff, and as incidental to the power to give that relief it might send the case to a referee, under whose direction this property snould be turned over, and by whom the defendants should be made to account for the interest or dividends which they had received, and the precise amount necessary to fix the full compensation to the plaintiff for what his trust estate had been robbed of, might be ascertained and adjudged.

It is claimed by the defendants that the plaintiff is not the real party in interest. That claim is based upon the assertion that the plaintiff did not show that he had a valid appointment as trustee in the place of Williamson. The facts in that regard are briefly as follows : Benjamin Williamson, the testator, was a citizen and resident of the State of New Jersey ; his will was admitted to probate in the Orphan's Court of that State. After Isaac Williamson's insolvency had been ascertained, proceedings were taken in that court for the substitution of a trustee. Service was made in those proceedings upon Isaac Williamson in the manner prescribed by the laws of New Jersey, and as a result of those proceedings a judgment was entered in the Orphan's Court in Union county, New Jersey, by which Isaac Williamson was removed and the plaintiff was appointed trustee in his place to perform the duties of trustee under the will, and Isaac Williamson was directed to deliver to the plaintiff all the goods, chattels, money and effects or other property which he held, or which he was entitled to hold, as such trustee. The objection made to this judgment is, in the first place, that by the will of Benjamin Williamson it was provided that if Isaac should be legally incapacitated or incompetent to manage the property or execute the trust, it was given to Lelia and Benjamin, or to the survivor of them. It appears from the will of Benjamin Williamson, which is printed in the record, that two separate trusts were created, in each of which Isaac Williamson was made trustee, and in each of which the *cestui que trusts* were his children, or some of them. The first trust was created by the 11th clause of the will and has already been referred to (for his children Lelia and Benjamin). That, as it seems, was a trust purely of personal property, and nothing more. The second trust was created by the 24th clause of

the will, and was a trust only of real estate. By that clause of the will a third of the real estate is given to Isaac Williamson in trust only, that the rents, issues and profits should be expended by him for the support of his family, and particularly for the education, support and maintenance of his children, Lelia and Benjamin. By a codicil in his will, made on the 8th of August, 1892, Benjamin Williamson struck out from the 24th clause the words " and particularly the education, support and maintenance of his children Lelia and Benjamin," leaving the trust in Isaac Williamson as to the real estate only for the support of his family, so that at his death Isaac Williamson was the trustee of two different trust estates; one in the personal property for the benefit of his children Lelia and Benjamin, and the other in the real estate which he took upon a trust to receive the rent, income and profits and devote them to the support of his family. It was in the 24th clause and with regard to the trust of the real estate that it was provided that if for any reason he should become incapable of performing the trust, it should devolve upon the children Lelia and Benjamin, and the property was given to them for that purpose and no other. So it will be seen that as to the personal property the court was still at liberty, in a proper case, to remove Isaac Williamson, and the testator made no provision for a substituted trustee. This is the clear effect of the will, and is the necessary result of the judgment of the Orphan's Court, and that court having by the appointment of the plaintiff adjudged that the trust continued, its determination, if it has jurisdiction, will not be questioned in this State. (*Smith* v. *Central Trust Co.*, 154 N. Y. 333.)

But it is said by the defendant that the Orphan's Court is not a court of general jurisdiction, and that for that reason its determination is not entitled to full force and effect in the courts of this State. Whether it be a court of general jurisdiction or not is not very material in this case. The making of the decree substituting the plaintiff as trustee is alleged in the complaint, and it is also alleged that the Orphan's Court had jurisdiction to make that decree. In view of these allegations it was competent for the plaintiff to prove what jurisdiction had been given to the Orphan's Court by the laws of New Jersey, and for that purpose, under these allegations, the laws of that State were competent evidence. These laws were

offered in evidence, and were properly received, and it appeared by those statutes which are in the record that the Orphan's Court had jurisdiction to remove an executor or trustee whenever he had wasted, misapplied or embezzled the estate intrusted to him, and to appoint some suitable person in his place; so that the judgment of the Orphan's Court was clearly authorized by the statutes of New Jersey. The statute prescribes that the person so appointed shall have authority to demand and receive the assets of the estate and to maintain all actions for their recovery or protection; and it has been determined by the Supreme Court of New Jersey that one who has been appointed trustee by the Orphan's Court under circumstances like those in this case, may maintain an action against a person who has received money of the trust estate, although such money was received by such person before the appointment of the substituted trustee. (*Budd* v. *Hiler*, 27 N. J. Law, 43.) This determination, therefore, of the Orphan's Court, giving to the plaintiff powers which have been thus established by the decision of the Supreme Court of the State interpreting its own statutes, is binding upon this court. (Suth. Stat. Const. § 191, and cases cited.) The trustee thus appointed may by virtue of that appointment sue in the courts of this State. (*Toronto General Trust Co.* v. *C., B. & Q. R. R. Co.*, 123 N. Y. 37.)

It is said by the defendant that the trust is void. This being a trust of personal property created by a resident of New Jersey, and in the State of New Jersey, it cannot be declared void by the courts of this State, as there is nothing to show that it is void under the statutes of New Jersey. (*Cross* v. *U. S. Trust Co.*, 131 N. Y. 330.)

There is no doubt that the use by Williamson of the trust fund for the purposes of speculation was a violation of the trust; and the defendants taking these securities with full notice that they were impressed with the trust are bound to account for them. (*Marshall* v. *De Cordova*, 50 N. Y. Supp. 294; *Suarez* v. *de Montigny*, 1 App. Div. 494; S. C., affd., 153 N. Y. 678.)

But it is said by the defendants that Williamson had the right to dispose of the principal and income of the trust fund. Undoubtedly, that is so. The 11th clause of the will expressly gives to him the entire discretion as to the time, amount and character of his

expenditures for this trust, and makes him the residuary legatee of the trust fund, absolutely in case of the death of the *cestui que trust* while he lives. But these expenditures are to be made for the benefit of the trust. The will does not authorize him to divert the fund from the purposes for which it was put in his hands as trustee, and to use it for speculative adventures which could in no way be for the benefit of the trust, and which might and did practically result in its destruction, so far as the trustee could bring it about. (*King* v. *Talbot*, 40 N. Y. 76; *Deobold* v. *Oppermann*, 111 id. 531.) There is no principle upon which a person who is vested with the title to property as trustee for a particular purpose, although he has the right to dispose of the trust itself for that purpose, can be authorized to invest it in speculative adventures, and no case has been cited, or has been found, which authorizes such a disposition.

These considerations require us to affirm this judgment upon the defendants' appeal.

But the plaintiff insists that he is entitled to an accounting of each particular transaction made by the defendants upon the direction of Williamson, the trustee, that he may take the profits wherever it appears that a single transaction resulted in a profit, without any liability to share in the losses which may have accrued. Undoubtedly, as is said by Judge WOODRUFF in the case of *King* v. *Talbot* (40 N. Y. 76), where there has been a misappropriation of trust funds and several separate and distinct investments have been made, some of which have been profitable and others unprofitable, the *cestui que trust* is at liberty to ratify such investments as have been profitable and take the profits which have accrued from them, and to reject the unprofitable ones, and as to them insist that he shall receive the money which has been invested in them, with interest. This rule is well established, and is founded in good sense. (*Norris's Appeal*, 71 Penn. St. 106; *Oliver* v. *Piatt*, 3 How. 333; *Robinson* v. *Robinson*, 11 Beav. 371.) But the facts of this case do not bring it within that rule. Here there was no setting apart of a particular portion of the trust fund and using it to make a particular investment which resulted in a profit and the setting apart of another portion of the fund for an investment which resulted in a loss. Whatever may be the theory, there was, as a matter of fact, no investment, in the true sense of the word, in any property whatever.

The trustee might undoubtedly at any time have selected any particular alleged purchase of stock or grain, and required the title to that to be transferred to him, but to enable him to do so it was necessary that he should have paid the full purchase price of the particular property sought to be transferred, and until he did pay it the defendants were entitled to hold it in their own name in order to protect their lien upon it for the unpaid portion of the purchase price. That this was done in the case of any investment does not appear. All that was done, so far as appears from the evidence, was, that the trustee directed the purchase of certain stocks or of certain quantities of grain. To secure the defendants for any investment that they might make in that regard, he delivered to them these securities which they were at liberty, undoubtedly, to sell, whenever it was necessary to repay them for money advanced. Upon the orders being made, the defendants, undoubtedly, went through the form of making a purchase, for the trustee's account, of the stock or grain which he directed them to buy; but if that purchase was, in fact, completed, the title to the property was never transferred to Williamson, and no portion of the trust fund was ever invested in it. That was held all the time by the defendants as a fund to which they might, if they saw fit, resort for the purpose of repaying themselves any losses which they were likely to suffer because of the dealings in which they engaged were for Williamson. These investments were not separate and distinct investments, as we have said, but the whole transaction was simply a series of purchases and sales which, so far as the defendants were concerned, we must assume were actually made, and which, if they had resulted in a profit, would have operated to the benefit of the trustee; but which, so far as the trust estate was concerned, were mere shadowy transactions not at any time affecting its amount or its nature or the income to which it was entitled, but only rendering it liable to be depleted at any time if the transaction should result in a loss, or affording a possibility of an increase in the remote probability that the speculator should be able to make profits. The case is not within the rule laid down in the cases above cited, but it is more like a case where the trustee has engaged with the trust fund in an unauthorized business, in which case the rule is that the *cestui que trust* may ratify the transactions of the trustee and take the profits, if there are profits, or he may, at

his election, take back the fund and the interest thereon, or the dividends which have accrued from the securities which constituted the fund, but he cannot take both. If he elects to ratify the action of the trustee, he must take it not only with the profits, but subject to the losses, but he cannot take the profits on one part of the transaction and interest on the other, and avoid the losses. (*Baker* v. *Disbrow*, 18 Hun, 29; affd., 79 N. Y. 631, on the opinion of the General Term.) The result is that that portion of the judgment appealed from by the plaintiff must also be affirmed.

As neither party has succeeded in this court, the judgment is affirmed, without costs.

Van Brunt, P. J., Barrett, Ingraham and McLaughlin, JJ., concurred.

Judgment affirmed, without costs.