## STEELE v. LEOPOLD et al.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§ 17*)—ADMINISTRATOR C. T. A.—JOINDER WITH INCOMPETENT PERSON.

Code Civ. Proc. § 2643, authorizes a surrogate to issue letters c. t. a. in the event that by death there is no executor or administrator c. t. a. qualified to act, and provides that the proceedings may be instituted by a person interested in the estate. Code Civ. Proc. § 2660, relating to persons "entitled to administration," provides in the first eight subdivisions the order in which persons are entitled to letters in case of intestacy, but provides in subdivision 9 for letters to an executor or administrator

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

of a "sole legatee named in a will," and then provides that, if there are several persons equally entitled to administration, the surrogate may grant letters to one or more of such persons and "administration" may be granted to one or more competent persons, although not entitled to the same, with the consent of the person to be joined with such person or persons. *Held*, that section 2660 was not confined to cases of intestacy, and that the provision in subdivision 9 as to joining incompetent persons applied to administrator c. t. a., and hence the father of a guardian of a sole legatee under a will who was entitled to administrator c. t. a. by the express provisions of section 2643 was properly joined with her as coadministrator on her request.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 57–59; Dec. Dig. § 17.*]

2. EXECUTORS AND ADMINISTRATORS (§ 29*)—ADMINISTRATOR C. T. A.—COL-
LATERAL ATTACK ON APPOINTMENTS.
Under Code Civ. Proc. § 2591, making letters of administration conclusive authority of administrators to act until the decree on which they were issued is reversed on appeal or revoked, the authority of an administrator c. t. a. to sue to recover an unlawful investment made by the executor cannot be attacked in such suit, in the absence of fraud or collusion.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 178; Dec. Dig. § 29.*]

3. EXECUTORS AND ADMINISTRATORS (§ 426*)—RECOVERY OF UNLAWFUL IN-
VESTMENTS—CAUSE OF ACTION—EXECUTOR OR TRUSTEE.
An executor was also charged with the duties of a trustee, in that he was to pay over the income of the estate to sole legatees. Before he had made an accounting, and before the time for presentation of claims had expired, and less than two months after the grant of letters of administration, he gave a portion of the estate to a stockbroker to deal in stocks; thus constituting an unlawful investment. *Held*, that the cause of action to recover the amount deposited with the broker was in the executor and those deriving their authority from that relation, and not in the executor as a trustee under the will.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1663; Dec. Dig. § 426.*]

4. ESTOPPEL (§ 77*)—AUTHORITY OF EXECUTOR—ESTOPPEL TO DENY.
Where a stockbroker dealt with an executor as such, whereby an unlawful investment was made with the funds of the estate, the broker was estopped to say that the cause of action to recover the funds turned over to the broker was not in the executor, or those claiming their authority from that relation, but in the executor as trustee.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 198–203; Dec. Dig. § 77.*]

5. EXECUTORS AND ADMINISTRATORS (§ 514*)—RECOVERY OF UNLAWFUL IN-
VESTMENTS—RIGHT TO SUE—EFFECT OF ACCOUNTING.
That an administrator c. t. a. suing to recover an unlawful investment before such suit accounted as administrator in the Surrogate's Court, and the decree settling his accounts did not discharge him as administrator, but expressly directed that he should hold the remainder of the assets under and pursuant to the will, would not deprive the administrator of the right to sue, since the accounting was an intermediate one.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 2292; Dec. Dig. § 514.*]

6. EXECUTORS AND ADMINISTRATORS (§ 102*) — INVESTMENTS — SPECULATIVE
TRANSACTIONS.
A transaction between an executor and a stockbroker, whereby funds of the estate are turned over to the latter for the purpose of speculating

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in stocks, though both parties are in good faith, is an unlawful invest-
ment, and may be recovered back by the estate.

[Ed. Note.—For other cases, see Executors and Administrators. Cent.
Dig. § 420; Dec. Dig. § 102.*]

7. EXECUTORS AND ADMINISTRATORS (§ 434*) — SPECULATIVE INVESTMENT —
RIGHT TO CREDITS—JOINT TORT-FEASORS.

Where an executor as such by agreement with a stockbroker turned
over to the latter funds of the estate for the purpose of dealing in stocks,
which, on equitable principles, is an unlawful investment, the parties are
not joint tort-feasors, in the sense that they have violated the law, there
being no question of bad faith involved and no positive law violated, and
a cash payment made by the stockbroker to the executor by reason of the
transaction should be allowed to the stockbroker as a credit in a suit to
recover back the funds so invested.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. § 1705; Dec. Dig. § 434.*]

8. EXECUTORS AND ADMINISTRATORS (§ 450*) — UNLAWFUL INVESTMENTS —
RIGHT TO CREDITS—BURDEN OF PROOF.

Where a stockbroker takes the funds of an estate on an agreement
with the executor for the purpose of dealing in stocks, which constitutes
an unlawful investment, and an action is thereafter brought to recover
back the funds placed in the hands of the broker, the burden is on him to
show that money paid by reason of the transaction was paid to the es-
tate, or that the estate had the benefit of it, before he can be allowed a
credit therefor.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. § 1862; Dec. Dig. § 450.*]

9. EXECUTORS AND ADMINISTRATORS (§ 450*) — UNLAWFUL INVESTMENTS —
RIGHT TO CREDIT—BURDEN OF PROOF.

Where a broker takes in good faith money from an executor, also act-
ing in good faith, to invest in stocks, which constitutes an unlawful in-
vestment recoverable back by the estate, and the broker makes cash pay-
ments to the executor which is charged on his accounts as money re-
ceived, the burden on the broker to be entitled to a credit therefor to
show that the money was paid to the estate, or that the estate had the
benefit of it, is met.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. § 1872; Dec. Dig. § 450.*]

10. APPEAL AND ERROR (§ 1151*)—MODIFICATION OF JUDGMENT—CONSTRUC-
TION OF JUDGMENT.

Where, in an action to recover funds of an estate deposited with a
broker to deal in stocks, which constituted an unlawful investment, it is
shown that there was no absence of good faith, and that the broker had
actually paid a portion of the money back to the executor so as to entitle
the broker to a credit therefor, a finding of the lower court that no part
of the same "was ever restored to the estate," which, if read literally,
would cause a reversal of the case, the facts of which could not be
changed on a new trial, will be construed to mean that the payment to
the executor was not a sufficient payment to the estate; and hence the
judgment would not be reversed, but modified by allowing the credit.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–
4506; Dec. Dig. § 1151.*]

11. EXECUTORS AND ADMINISTRATORS (§ 453*)—SUIT TO RECOVER UNLAWFUL
INVESTMENTS—QUESTIONS DETERMINED—CONTRIBUTION.

A suit to recover back funds of an estate unlawfully deposited with a
stockbroker by a deceased executor was brought against the broker, and
no claim was made against the estate of the deceased executor, but the
personal representatives of such executor were brought in as parties.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*Held*, that the court would not adjudicate the question of the right to contribution or to a recovery over, as between them and the plaintiff.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 453.*]

12. APPEAL AND ERROR (§ 1152*)—MODIFICATION OF JUDGMENT—EXECUTORS AND ADMINISTRATORS.

Where in such case the judgment of the lower court was silent as to the right of contribution, the judgment would be modified by inserting a provision that it was without prejudice to any action which the stockbroker might bring against the personal representatives of the executor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4483–4496; Dec. Dig. § 1152.*]

Clarke, J., dissenting in part.

Appeal from Special Term, New York County.

Action by Franklin Steele, as administrator, against James M. Leopold and others. From a judgment for plaintiff, defendants appeal. Modified.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edmond E. Wise, for appellants.
C. R. Waterbury, for respondent.

LAUGHLIN, J. On the 21st day of July, 1902, Edward E. Gwynne, now deceased, was acting as the executor of the estate of Louise Gwynne, deceased, and had a large amount of money to his credit as such executor in the Fifth Avenue Trust Company in the city of New York. On that day he drew a check on this account in his name as executor, payable to the order of the appellants, under their firm name of James M. Leopold & Co., who were conducting the business of stockbrokers as copartners and delivered it to them, and thereupon he opened an account with them in his name as executor for the purpose of speculating in stocks, bonds, and other securities on margins. They credited his account with the amount of the check, and subsequently collected it. The account shows various transactions, but none of the stocks or securities purchased were delivered to the executor or transferred to his name on the books of the corporation issuing them. This action is brought to recover the amount of that check, with interest; and it is alleged in the complaint that it was a wrongful diversion of trust funds, and that they and the deceased executor were joint tort-feasors. The appellants denied, by their answer, the right of the plaintiff to maintain the action, upon the ground that the plaintiff Steele was not a party to whom letters of administration with the will annexed could be issued, and that, therefore, the Surrogate's Court was without jurisdiction to issue the same; and they also raised the objection by answer that the right of action, if any, was in the trustee of the trusts under the will of Louise Gwynne, deceased; and they further claimed that they were at least entitled to a credit for the sum of $550 paid to the deceased executor from the account which he opened with them. Appellants also contend that they should have been awarded judgment over against the personal repre-

sentatives of the deceased executor. They made other claims upon the trial which are not pressed here, and therefore need not be considered. The appellants have been held liable for the full amount.

This action was commenced on the 23d day of November, 1905, by the plaintiff Steele as administrator and by one Helen Steele Gwynne, as administratrix with the will annexed of the deceased Louise Gwynne. Louise Gwynne, the plaintiff's testatrix, died on the 25th or 27th—it appears by the complaint and by a deposition that it was on the 25th, and by a stipulation that it was on the 27th—day of May, 1902, leaving a last will and testament in and by which she appointed her son, Edward E. Gwynne, her executor. The will was duly probated, and letters testamentary were issued to him on the 31st day of May, 1902, and he duly qualified and acted as executor, but died, without having accounted, and insolvent, on the 9th day of May, 1904, having been duly adjudged a bankrupt on the 3d day of June, 1902. On the 18th day of August, 1904, Helen Steele Gwynne presented to the Surrogate's Court a duly verified petition, showing, among other things, that she was a resident of the county of New York, that on the 27th day of July, 1904, she was duly appointed the general guardian of the person and estate of the three grandchildren of the plaintiff's testatrix by the surrogate of the county of New York, that they were the sole legatees under the will, the probate of the will, and issuance of letters testamentary to her husband and his death, having assets of the estate in his hand, and praying that letters testamentary be issued to her and to her father who resided at the city of Washington, D. C. A decree was duly made on the 1st day of September, 1904, appointing her and her father, Franklin Steele, administratrix and administrator with the will annexed of Louise Gwynne, deceased. It appears by the will of Louise Gwynne, deceased, that, after directing the payment of her debts, funeral charges, and expense of administration, and making a specific bequest of her jewelry, she directed that her executor divide the rest, residue, and remainder of her property "into three equal shares or parts," and that he pay over the income of one of such shares or parts to each of her three grandchildren therein named until such grandchild should attain the age of 21 years, at which time the grandchild, if living, was to receive the principal, and, in the event of his death before such time, his share was to go to the survivors or survivor of the grandchildren. The executor was authorized to sell the real estate of the testatrix and to invest and reinvest the proceeds thereof "in such securities as he in his judgment may deem best."

Helen Steele Gwynne is the mother of the grandchildren and the widow of Edward E. Gwynne, deceased. It is not claimed that she was not authorized to receive letters of administration with the will annexed, but the contention is that her father was not so authorized, and that he could not be joined with her. We are of opinion that this contention is not well founded. It is based on the provisions of section 2643 of the Code of Civil Procedure, which expressly authorize the surrogate to issue letters of administration with the will annexed in the event that, by death or otherwise, there is no executor or administrator with the will annexed qualified to act. Section 2643 pro-

vides that the proceeding may be instituted by a person interested in
the estate. It is manifest that the guardian of the property of the sole
legatees was such a person. The petition was .sufficient to give the
Surrogate's Court jurisdiction to issue letters of administration with
the will annexed, and, in the absence of fraud or collusion with re-
spect to the jurisdictional facts, jurisdiction is conclusively presumed.
Code Civ. Proc. § 2473. Any one of the residuary legatees, or, in
case he is a minor, his guardian if competent, is by virtue of the ex-
press provisions of section 2643 first entitled to such letters, and there-
fore it is perfectly clear that she was entitled to receive the letters of
administration. With respect to the validity of the letters issued to
her father, the learned counsel for the respondents relies on a provi-
sion in or following subdivision 9 of section 2660 of the Code of Civil
Procedure, as follows:

"If there are several persons equally entitled to administration, the surro-
gate may grant letters to one or more of such persons, and administration
may be granted to one or more competent persons, although not entitled to
the same, with the consent of the person entitled to be joined with such per-
son or persons; which consent must be in writing and filed in the office of the
surrogate."

Most of the provisions of that section do, as claimed by counsel for
appellants, relate to cases of intestacy, but it seems clear that subdivi-
sion 9 relates to cases in which the decedent has left a will, for, after
specifying in eight subdivisions the order in which persons are entitled
to letters, it is provided in the ninth as follows:

"And an executor or administrator of a sole legatee named in a will where-
by the whole estate is devised to such deceased sole legatee."

This subdivision we think relates to letters of administration with
the will annexed, which is the case at bar, and it has been so held by
two of the learned surrogates of this county who in their opinions
trace the history of the legislation which ultimately resulted in the in-
corporation of these provisions in this section of the Code, and such
they state has been the practice thereunder. Matter of Morgan, 4
Dem. Sur. 68; Matter of Moehring, 24 Misc. Rep. 418, 53 N. Y. Supp.
730. We see no reason why the general provisions with respect to join-
ing a competent person with one entitled to letters of administration in
case of intestacy should not apply likewise to letters of administration
with the will annexed. The provisions of the statute herein quoted
refer to persons "entitled to administration." This provision is gen-
eral, and is not confined to administration in cases of intestacy. The
guardian of the sole legatees was entitled to administration, and fairly
comes within the statute. But, if this were not so, by the express pro-
visions of section 2591 of the Code of Civil Procedure the letters of
administration are made conclusive authority of the administrator to
act until the decree upon which they were issued is reversed on appeal
or revoked at least in the absence of allegations and proof of fraud
or collusion in attempting to give the Surrogate's Court jurisdiction
to issue them. Hoes v. N. Y., N. H. & H. R. R. Co., 173 N. Y. 435,
66 N. E. 119. The person to whom letters are issued is accountable
to the estate for any property received under or by virtue of them,

and it was competent for the Legislature to preclude a litigation over the validity of the letters where the Surrogate's Court had jurisdiction to issue letters, and the claim of invalidity is based, not on want of jurisdiction to issue letters, but on lack of authority to issue them to a particular party.

It appears that pending the action, and on the 1st day of April, 1907, Helen Steele Gwynne duly accounted, and letters of administration to her were revoked. The decree, however, expressly provided that the plaintiff, as her coadministrator, should continue the administration of the estate under the letters theretofore granted to him. On the 1st day of November thereafter, by an order of the Special Term, Helen. Steele Gwynne, as administratrix, was stricken from the record as a party plaintiff, and Steele, as administrator, was permitted to prosecute the action as the sole plaintiff; and at the instance of the appellants he was thereupon by the same order required to bring in as parties defendant Helen Steele Gwynne and himself, as administratrix and administrator of Edward E. Gwynne, deceased, and to serve what is described as "an amended and supplemental summons and complaint," bringing them in. This was done and the original sole defendants, these appellants, who had unsuccessfully demurred to the original complaint (116 App. Div. 913, 101 N. Y. Supp. 1124), answered jointly and served answers on the plaintiff and on their codefendants thus brought in. The personal representatives of the deceased, Edward E. Gwynne, thus brought in, appeared, but did not answer, and are represented by the same counsel who represents the plaintiff. It appears that the theory upon which the personal representatives of Edwin E. Gwynne were brought in was that the appellants claimed a right to have them in to the end that a recovery over against them might be had. No objection was taken by answer to the right of the plaintiff to continue the action, based on the ground that his appointment as administrator with the will annexed, although valid when made, fell with the revocation of the letters to Helen Steele Gwynne, nor is that point presented on the appeal, and therefore it is not decided. It may be observed, however, that it would seem from the provisions of section 2591 of the Code of Civil Procedure that when the Surrogate's Court obtains jurisdiction, as it clearly did by the petition, to issue letters of administration, and the issuance thereof is authorized, they remain valid until the decree pursuant to which they were issued is reversed or until they are revoked by an order of the Surrogate's Court, and that they cannot be questioned collaterally in the absence of course, of fraud or collusion with respect to the jurisdictional facts.

The further point is taken by the appellants that the deceased, Gwynne, was not acting as executor at the time of this unauthorized investment or appropriation of the trust funds for the purpose of speculating therewith. This claim is based upon the theory that his duties as executor had terminated, and that he then held the fund as trustee under the will for the benefit of the three residuary legatees, and that, therefore, he became a trustee, and the cause of action, if any, vested in him, not as executor, but as trustee of those trusts. This

objection is untenable. It will be observed that less than two months had elapsed after he received the letters of administration before he violated his trust by thus appropriating the funds. The time for the presentation of claims against the estate had not expired. The funds had not been divided into the separate trusts, even by the executor, and no report had been made thereon to the Surrogate's Court, and the executor had not accounted or been discharged as executor or directed to turn over the funds to himself as trustee or to hold them as trustee. On this state of facts it seems perfectly clear that the deceased, Gwynne, was at the time acting as executor and held the funds as such, for his sole authority to hold them was derived from the will wherein he was designated as executor and not as trustee, and his duties as executor had not terminated. Matter of Hood, 98 N. Y. 363; s. c. 104 N. Y. 103, 10 N. E. 35; Lansing v. Lansing, 45 Barb. 182; Matter of Underhill, 35 App. Div. 434, 54 N. Y. Supp. 967, affirmed 158 N. Y. 721, 53 N. E. 1133; Cluff v. Day et al., 124 N. Y. 195, 26 N. E. 306. The doctrine of these cases is not modified by Laytin v. Davidson et al., 95 N. Y. 263, and Olcott v. Baldwin, 190 N. Y. 99, 82 N. E. 748, wherein an accounting as executor and setting apart of the trust funds were not deemed conditions precedent to the termination of the duties of executor and the commencement of his duty as a trustee. In those cases by special provisions of the will, it was contemplated that the executorial duties should end and the trust duties commence at a given time or on the happening of an event which had transpired. The cause of action which arose immediately on account of the unauthorized use of the trust fund was one which accrued to Gwynne as executor to recover the money, if it remained intact in the hands of the appellants, or for an accounting by which the appellants would be required to return the money, together with interest thereon, or, at the election of the executor, the profits made thereon. Marshall v. De Cordova, 26 App. Div. 617, 50 N. Y. Supp. 294; English v. McIntyre, 29 App. Div. 439, 51 N. Y. Supp. 697; Thompson v. Whitmarsh, 100 N. Y. 35, 2 N. E. 273; Moore v. American Loan & Trust Co., 115 N. Y. 65;[1] Deobold v. Oppermann et al., 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; Matter of Myers, 131 N. Y. 409, 30 N. E. 135; King v. Talbot, 40 N. Y. 86. The contract with the brokers being unauthorized, the rule applicable to actions on contracts made by an executor in the administration of the estate by which he is required to sue individually (Austin et al. v. Munroe et al., 47 N. Y. 360; Thompson v. Whitmarsh, 100 N. Y. 35, 2 N. E. 273) doubtless would not be applicable, and the cause of action would vest in him in his representative capacity as if for an action to recover property belonging to the estate. Moreover, appellants dealt with Gwynne as executor, and they should not be heard to question the capacity in which he was acting. It appears that on the 4th day of March, 1905, before the action was commenced, the plaintiff Steele accounted as administrator in the Surrogate's Court, and a decree was entered settling his account. It is manifest, however, that that was an intermediate accounting, for the decree does not discharge him as administrator, but, on the contrary, expressly directs that he shall hold

1 21 N. E. 681.

the remainder of the assets "under and pursuant to the last will and testament of Louise Gwynne, deceased." This accounting did not terminate the right of Steele as administrator to maintain this action, and it is perfectly clear that he will be accountable to the estate for the benefit of the cestui que trust under the three residuary trusts in the will for any moneys which he may recover in this action, and that the recovery will cancel the liability of the appellants.' See Moss v. Cohen, 158 N. Y. 240, 247, 58 N. E. 8; Bingham v. Marine Nat. Bank, 112 N. Y. 661, 19 N. E. 416; Spies v. Michelsen, 2 App. Div. 226, 37 N. Y. Supp. 720. Since we are of opinion that the cause of action vested in the executor as such, and not in him as a trustee by implication by virtue of the provisions of the will, it becomes unnecessary to consider the further question as to whether, if the cause of action were vested in Steele as trustee, the fact that he was formally appointed a trustee of the trusts under the will by an order of the Supreme Court on the 25th day of September, 1907, would enable him to maintain the action as administrator, as contended by counsel for respondent, being accountable as administrator to himself as trustee for the fruits of the action.

A serious question is presented by the exceptions of the appellants to the refusal of the court to find that they were entitled to credit for certain amounts which they paid to the executor. As has been seen, the account was opened on the books of the appellants with the executor in his representative capacity. It appears by uncontroverted evidence that the appellants paid to the executor from this account, and charged him as executor in the account therewith the sum of $200 on the 8th day of August by a "cash draft" and in cash $35 on the 15th, $55 on the 16th, $10 on the 22d, and $200 on the 26th days of August, respectively, and $75 on the 12th day of September, aggregating the sum of $575. The learned trial justice disallowed this claim for credit on account of these items upon the theory that the appellants and the deceased executor were joint tort-feasors, and for the same reason he denied the right of the appellants to contribution or a recovery over against the personal representatives of the deceased executor. We are of opinion that in this the trial court erred. Of course, if the appellants and the executor were guilty of bad faith, or if they violated the express command of a statute, or if their acts were inherently dishonest, then they would be joint tort-feasors (Moss v. Cohen, 158 N. Y. 246, 247, 53 N. E. 8; Holden v. N. Y., etc., Bank, 72 N. Y. 286; Knapp v. Roche, 94 N. Y. 329), but such are not the facts in the case at bar. Speculating in stock on margins is not prohibited by law. It is perfectly lawful (Hurd v. Taylor, 181 N. Y. 231, 73 N. E. 977), but courts of equity, by a long line of decisions, have established a rule that an investment of trust funds in a speculative enterprise or in business is not consistent with the exercise of the care which a trustee owes to the cestuis que trust to safely hold, invest, and preserve the funds, and therefore the trustee who makes such an investment or use of trust funds is at liberty to, and it is his duty to, disaffirm his own acts and restore or recover the funds thus applied. Deobold v. Oppermann, supra; Matter of Myers, supra; Moore v. American Loan

120 N.Y.S.—37

& Trust Co., supra; King v. Talbot, supra. Such an appropriation of trust funds is regarded as a devastavit, and the funds are at once recoverable, but it does not follow that the act is in all cases regarded as corrupt or so contrary to the rules of public policy that it must necessarily be considered tortious. The Legislature has authorized investments by trustees in certain securities, but it has not expressly prohibited other investments by them (section 21, Personal Property Law, being chapter 41, Consol. Laws). It has long been the settled law of England that there is a right of contribution between trustees who become liable to the cestui que trust for an unauthorized or improper investment, and, moreover, that a trustee in such case may recover against a cestui que trust who induced the investment to the extent of the interest of the latter therein. Chillingworth v. Chambers, L. T. R. vol. 74, N. S. 34. This use of the trust funds was unauthorized, and the appellants had notice by the form of the account and they thereupon became liable to the estate immediately; but the question is: Are they wrongdoers in the sense that their act necessarily involves or implies a state of facts or mind on account of which they should be left without remedy by the courts as between themselves? We are of opinion that it does not. See Moss v. Cohen, supra. The testator might lawfully authorize the investment of his property in a business enterprise (Willis v. Sharp, 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493), and I know of no law prohibiting from directing that his executors continue or open and conduct for a given time a speculative account for the benefit of his estate. The executor evidently supposed that he had such authority, for he did not attempt to gain any private advantage by the speculation. He did not convey trust funds to his individual use. He, in effect, represented to the appellants that as executor he was authorized to open the account. He and the brokers apparently acted openly and in good faith. The estate would have had the right to ratify his acts, and, as executor, he, as already observed, had a right of action to recover the moneys, which he might have enforced at any time. The account showed certain moneys to his credit. Of these moneys the appellants concededly paid over to him the sum of $575. He was only entitled to the moneys as executor. He is charged in the account with them as executor. The fair and we think the only reasonable inference is that they were paid to him as executor. The learned counsel for the plaintiff, on the argument, conceded that, if these moneys had been repaid to the executor by check drawn to his order in his representative capacity, the appellants would have been entitled to credit therefor. The learned counsel for the plaintiff, however, invokes the doctrine of the case of "Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435, and Moore v. American Loan & Trust Co., supra, to the effect that the burden is on the appellants to show that the money has actually been restored to the estate, or that the estate has had the benefit thereof. We are of opinion that the doctrine of those cases and kindred cases is not controlling here, for the reason that as executor, the deceased, Gwynne, had the right to receive back this money any time after it was delivered to the appellants, and on account of the form of the account, we are of opinion that it

cannot be successfully maintained that the payments made were made to him individually and not as executor. Of course, the burden was upon the appellants to show repayment to Gwynne as executor, or to some one authorized to receive the money for the estate (Marshall v. De Cordova, supra; Moore v. Am. Loan & Trust Company, supra), but we are of opinion that the appellants satisfactorily bore that burden, and established a defense in part (Knapp v. Roche, 94 N. Y. 329–332), and therefore, unless the judgment can be modified, there must be a reversal. The learned court found that no part of this sum "was ever restored or repaid to the estate of said Louise Gwynne." If this finding is to be taken literally, we cannot modify the judgment by allowing credit for the amount which the appellants paid to the executor with interest from the date of such payments. Counsel for plaintiff contends, in effect, that the finding is sustained literally by the evidence. The facts, however, are uncontroverted, and there is nothing to indicate that they can be changed upon a new trial. We are of opinion that this finding should receive the construction that the learned court means thereby that a payment to the executor was not sufficient, and that, as contended by counsel for the respondents, appellants were called upon to show further that the executor used the moneys which were repaid to him for the benefit of the estate. Of course, we are precluded by this finding from modifying the judgment on the theory advanced by appellants, that the estate actually received the benefit of the moneys thus repaid, which was not very satisfactorily shown, but a new trial should be avoided, if possible, and we think that we are not precluded by this finding from modifying the judgment upon the theory that by the uncontroverted evidence, which it is not claimed can be changed on a new trial, it appears that the moneys were paid to the deceased Gwynne as executor. We deem this sufficient to entitle the appellants to credit for the amount so paid and the judgment should be modified by allowing them credit therefor, together with interest on the amount of each payment from the time it was made.

The appellants further contend that they are entitled to a judgment over against the estate of the deceased executor. If they were joint tort-feasors with him, they would not have such right of recovery over, but, in the view we take of the case, they probably have that right. However, that is a matter with which the plaintiff is not concerned, and it should not be litigated in this action. The plaintiff saw fit to elect to bring the action against the brokers, and no claim is made against the estate of the deceased executor. There was, therefore, no propriety in bringing in the representatives of his estate, and the fact that they were brought in does not compel the court to adjudicate the question of a right to contribution or a recovery over as between them and the appellants. Since, however, the representatives of deceased executor were brought in and appellants have served an answer on them, setting forth the facts in which judgment over is demanded to prevent any question with respect to the judgment being a bar to an action that may be brought hereafter by the appellants against the repre- sentatives of the estate of the deceased executor, if, in view of his

bankruptcy they deem such course profitable, the judgment should be further modified by inserting a provision to the effect that it is without prejudice to any action which the appellants may hereafter bring against the personal representatives of the deceased executor, or on account of the facts set forth in their answer herein.

The judgment should therefore be modified in accordance with these views, and, as modified, affirmed without costs. Let the order be settled on notice.

INGRAHAM and SCOTT, JJ., concur. CLARKE, J., dissents, and votes for affirmance. PATTERSON, P. J., not voting.