ANNA STARK, as Administratrix of NOAH STARK, Deceased, Plaintiff, *v.* THE NATIONAL CITY BANK OF NEW YORK and RAYMOND A. MULDOON, Impleaded with TRANSAMERICA CORPORATION and JAMES F. CAVAGNARO, Defendants, and ANNA STARK, Individually, Defendant-Impleaded.

Supreme Court, Trial Term, New York County, August 11, 1936.

*Austrian & Lance* [*Saul J. Lance* and *George H. Schwartz* of counsel], for the plaintiff.

*Shearman & Sterling* [*Carl A. Mead* and *Lester Kissel* of counsel], for the defendants Raymond A. Muldoon and The National City Bank of New York.

*Cravath, deGersdorff, Swaine & Wood* [*Samuel B. Stewart, Jr.*, and *John F. Harding* of counsel], for the defendants James F. Cavagnaro and Transamerica Corporation.

HAMMER, J. This action was tried by the court without a jury. The making of formal findings and conclusions was waived. The trial was reopened under stipulation dated June 19, 1936, additional evidence admitted over objection, motions considered renewed and the trial closed.

The plaintiff, as administratrix of Noah Stark, deceased, sues to recover the loss of the estate consisting allegedly of the value of twenty-four shares of stock of Bancitaly Corporation and thirty shares of Bank of Italy, plus $2,137, which belonged to the estate of Noah Stark, and were exchanged by plaintiff on September 20, 1929, for 192 shares of Transamerica Corporation.

Noah Stark died a resident of New York in June, 1928, letters of administration being issued to his widow, Anna Stark, the plaintiff, on July 3, 1928. She is still acting as administratrix.

An offer was made on stationery of Bancitaly Corporation, signed by A. P. Gianinni on October 24, 1928, to stockholders of Bancitaly and Bank of Italy, which informed them that Transamerica had bee n incorporated to acquire control of said corporations, invited them to participate by exchanging one share of Transamerica stock for each share of Bancitaly stock and one and three-quarter shares of Transamerica stock for each share of Bank of Italy stock and which requested such of said stockholders as resided in the Eastern States to deliver their stock " to James F. Cavagnaro, Vice-President, Bank of America, 680 Broadway, New York City." Gianinni was president of Transamerica Corporation and it may fairly be assumed the offer was made by it. On September 20, 1929, Gustavus Leight, an attorney representing the estate of Noah Stark, came to the office of Bank of America at 680 Broadway and discussed with the defendant Muldoon, who was in charge of the customers' securities department, the question of converting twenty-four shares of Bancitaly stock and thirty shares of Bank of Italy stock into Transamerica Corporation stock. Muldoon in that conversation advised Leight that the exchange could be consummated by paying $2,137 in addition to the shares of Bancitaly and Bank of Italy stock.

On September 20, 1929, Muldoon received from Leight three checks in the respective amounts of $2,000, $55 and $82, together with the certificates for twenty-four shares of Bancitaly stock and thirty shares of Bank of Italy stock for exchange into Transamerica Corporation stock. The certificates were in the name of Noah Stark, the decedent, and were duly indorsed by the administratrix and accompanied by surrogate's certificate of the appointment of the administratrix and waivers of the State Tax Commission. These checks were indorsed by Muldoon, " Cust. Sec.," and collected by Bank of America. Bank of America then issued two cashier's checks, one payable to Transamerica in the amount of $2,055 and the other payable to " James F. Cavagnaro, Agent," in the amount of $82.

Muldoon sent the stock certificates, together with the $2,055 check, by mail to Bank of Italy in San Francisco. The shares of Bancitaly and Bank of Italy stock were canceled by Bank of Italy and new certificates of Bank of Italy and of a new corporation, Bancitaly Company of America (organized to take over the assets of Bancitaly) were issued to Transamerica Corporation. Three eertificates of 192 shares of Transamerica Corporation stock were thereupon issued in the name of Anna Stark, as administratrix, and sent to Muldoon, Customers Securities Department, Bank of America, which shares were in turn delivered by Muldoon to Leight.

The instruments delivered to Muldoon and those issued by Transamerica Corporation indicate that both defendant corporations and Muldoon were advised that the administratrix was obtaining the new shares for the estate and giving assets of the estate as payment at least in part. (*Matter of Title & Mortgage Guarantee Co. of Buffalo*, 246 App. Div. 436, 438, 439.)

Defendants Muldoon and Cavagnaro were employees of the Bank of America and their acts in respect of the transaction in suit were the acts of that bank. Cavagnaro was also a vice-president of Transamerica.

Neither Muldoon nor Cavagnaro was required to exercise any judgment or discretion in respect of stock surrendered, payments made or new certificates issued. Each of them followed a routine established by their superiors. The evidence in my opinion does not warrant a recovery by plaintiff against either Muldoon or Cavagnaro for the loss sustained by the estate.

It is conceded that defendant, the National City Bank of New York, has assumed any liability which may be established in this action against the Bank of America. Plaintiff's claim is that the exchange transaction constituted an *improper, imprudent* and unlawful investment under section 111 of the Decedent Estate Law

and section 21 of the Personal Property Law. In the absence of express or other sufficient authority there can be no question but that the employment by trustees of trust property in trade, or speculation, or in the prosecution, as loans, the purchase of stock or otherwise, of mercantile, commercial or manufacturing enterprises is unlawful and any loss resulting constitutes a devastavit for which the trustee is liable. (*King* v. *Talbot*, 40 N. Y. 76; *Matter of Myers*, 131 id. 409; *Warren* v. *Union Bank of Rochester*, 157 id. 259; *Steele* v. *Leopold*, 135 App. Div. 247; modfd., 201 N. Y. 518.)

Defendants, relying mainly upon the authority of *Delafield* v. *Barret* (245 App. Div. 33; modfd., 270 N. Y. 43), do not admit plaintiff's responsibility for the loss incurred and assert they are not liable to plaintiff in any event. Briefly defendants' main position, not passed upon above, is the following:

Investment of trust funds in " non-legal " stock is not *ipso facto* improper, but merely imposes upon the fiduciary an onus of explanation in case of loss.

The transaction here attacked involved merely an exchange of " non-legals " for other " non-legals " and not a new investment of trust funds. The acquisition of the new stock by such exchange was proper. The loss did not result from the exchange, but from the general financial depression.

Plaintiff can have no cause of action for damages, the right of an estate, if it exists in such circumstances, being limited to a return of the assets improperly exchanged by the administratrix.

In *Delafield* v. *Barret* (270 N. Y. 43, at pp. 48, 49) the rule is stated as follows: " The result of the investment of trust funds in securities not within the classes specified in the statutes is suggested in *Steele* v. *Leopold* (135 App. Div. 247, 257; modfd., 201 N. Y. 518) in the following language: ' Such an appropriation of trust funds is regarded as a devastavit, and the funds are at once recoverable, but it does not follow that the act is in all cases regarded as corrupt or so contrary to the rules of public policy that it must necessarily be considered tortious.' * * * If he invests in securities other than those of the permitted class, he cannot set up the statute as supporting either his good judgment or his good faith. If loss results he must bear the loss."

There can be no question but that such rule applied here requires the plaintiff administratrix to bear the loss and make good the original assets or their value to the estate. Any person who knowingly deals with a fiduciary and receives property which he knows or should have known constitutes any part of the trust does so at

his peril. If the disposition is a violation of the fiduciary's duty and loss results, such person is liable as conniving with or aiding the fiduciary therein and is responsible for the property received as purchaser or otherwise. The rule is stated in *National Surety Co.* v. *Manhattan Mortgage Co.* (185 App. Div. 733; affd., 230 N. Y. 545): " Where a trustee wrongfully diverts trust funds he is liable, as for a devastavit and all knowingly assisting him therein are generally liable for the injury done to the *cestui que* trust. This is a salutary rule and is in accord with that principle of law which makes all persons knowingly participating in a wrong equally liable for the damages sustained thereby."

To the same effect are the following authorities: *Steele* v. *Leopold* (*supra*); *Scully* v. *McGrath* (201 N. Y. 61); *Deobold* v. *Opperman* (111 id. 531); *Zimmerman* v. *Kinkle* (108 id. 282); *Wetmore* v. *Porter* (92 id. 76); *Moss* v. *Cohen* (158 id. 240); *English* v. *McIntyre* (29 App. Div. 439); *Squire* v. *Ordemann* (194 N. Y. 394); *Marshall* v. *De Cordova* (26 App. Div. 615, 618); *Clarkson Home* v. *Missouri, K. & T. R. Co.* (182 N. Y. 47); *Moore* v. *American Loan & Trust Co.* (115 id. 65, 79); *First National Bank of Paterson* v. *National Broadway Bank* (156 id. 459, 467.)

It seems clear that the acquisition of the Transamerica stock was a new investment not permitted by the statutes and not such as diligent and prudent men of discretion would purchase with trust funds. The old non-legal stock was not alone exchanged, new avails were added to complete the transaction, which in effect liquidated the old stock and reinvested the total acquired avails in the new. Any contention that the exchange of Bancitaly and Bank of Italy stock for Transamerica Corporation stock was authorized by reason of identity of same or of the interests and holdings of the companies is without merit. The corporations were not substantially the same. Bank of Italy National Trust and Savings Association was a California bank and is still in existence under the name of Bank of America National Trust and Savings Association. Its stock had a definite market value and could be sold in 1928 and 1929. Bancitaly Corporation was a New York investment corporation dissolved in 1928, the certificate of dissolution being filed in June, 1929, with the Secretary of the State of New York. At the time of the transaction here involved in September, 1929, plaintiff was entitled to receive a proportionate distribution of its assets. The stock could also have been sold in the New York market. Transamerica Corporation is a New Jersey holding corporation organized to acquire the stock of the two mentioned corporations and stock of numerous other corporations. In September, 1929, it owned stock in Bank of Italy National

Trust and Savings Association, Bancitaly Company of America, Bank of America National Association, Bancamerica-Blair Corporation, Bank of America of California, the Corporation of America, Banca D'America D'Italia, California Joint Stock Land Bank, Bankitaly Mortgage Company and Bankitaly Agricultural Credit Company. It would seem that here there is shown not merely a succession in interest or merger, no mere enlargement of corporate powers, nor even changes in corporate structure within the bounds of the original corporate identity, but rather a new juristic entity. The old companies were not reorganized, nor was the new stock a reissue of the old shares. The identity was not substantially preserved. The administratrix was under no duty, and neither had nor obtained any authority, to exchange the old for the new. (*Mertz* v. *Guarantee Trust Co.*, 247 N. Y. 137; *Matter of Anson*, L. R. [1907] 2 Ch. 425; *Broderick* v. *Aaron*, 151 Misc. 516, 527, 528; *Matter of McCafferty*, 147 id. 179.)

The old shares were trust property and the corporate defendants received it from the plaintiff as administratrix. She had no power to part with such shares for the purpose for which they received same. In seeking to recover back what she should not have delivered over, she is performing a duty of her office, as administratrix. The corporate defendants received the property knowing it was a trust and transferred by the administratrix in violation of her duty. They accepted such property subject to rights not only of those entitled to receive the benefit of same as an asset of the estate, but also of the trustee to reclaim possession or recover for any loss to the estate arising while such property was out of the administratrix's possession. (*Zimmerman* v. *Kinkle, supra; Wetmore* v. *Porter, supra.*) Where loss occurs it amounts to waste and being a devastavit the trustee is liable therefor. Whether the corporate defendants may be held as purchaser or agent of the purchasers of the old stock, or as agent for the administratrix in acquiring the new or as knowingly aiding or abetting in the unlawful use of the property by the administratrix, they are liable to her as the representative of the estate for the loss sustained. (*National Surety Co.* v. *Manhattan Mortgage Co., supra.*)

While there is no question that an action in equity will lie, and is, perhaps, the more appropriate to adjust the equities between the parties, there does not seem to be any valid objection, the damages being readily ascertainable, to an action at law for the loss to the estate. (*Empire State Surety Co.* v. *Cohen*, 93 Misc. 299.) In the present action a motion was made before trial to strike the cause from the law calendar on the ground that the relief sought by plaintiff was in equity. The motion was denied and no appeal

taken, although the time to do so ran and expired before trial. It was the duty of the administratrix to dispose of the old non-authorized investment of the estate. For the disposition of same she had become obligated at her accounting for the value thereof. This would seem to be the loss suffered by the estate. If she paid out any cash funds of the estate for an unauthorized purchase that also is part of the loss to the estate. She is entitled as administratrix to be reimbursed upon the return of the non-legal property obtained. An administratrix has no power, at least without authorization of the court, to borrow money. Money borrowed without authorization and used as part payment for non-legal stock purchased without power is no loss to the estate and for it an administratrix cannot properly be allowed credit on her accounting. In my opinion such borrowed money cannot be recovered here by plaintiff from the defendants. It does not seem to me that a trustee could justly or equitably be permitted to borrow money without authority for the trust estate, use it to purchase non-legal stock and if the result were a loss either partial or total get back the borrowed money on the return of the stock which had become undesirable. Various cross-claims by defendants are presented by the pleadings. That of Cavagnaro which is based upon any liability imposed upon him in this action, none being found and he being held not responsible to plaintiff, is dismissed without prejudice in the event that such finding and holding be not the final judgment herein. The cross-claim of Transamerica against National City Bank based upon negligence of the latter's predecessor in this transaction, the Bank of America, in acting in the matter as its agent, is dismissed upon the merits. It is pointed out above, sufficiently, I think, that liability here upon the part of Transamerica is not predicated upon any negligence in the performance by the bank of its duty to Transamerica. The liability of each is predicated upon its own acts done with knowledge and resulting in loss to the estate. The cross-claim of National City Bank and Muldoon against Transamerica based upon no participation of Bank of America as an entity, and the actual performance of any acts charged to it by employees loaned to and acting directly for Transamerica is dismissed upon the merits. The cross-claim of National City and Muldoon against Anna Stark individually is dismissed upon the merits. In addition to all the matters heretofore pointed out it clearly appears that Anna Stark in her dealings with the defendant, with the possible exception of the delivery over of the money borrowed by her, acted to the knowledge of the defendants as administratrix. She did not agree to idemnify them. No misrepresentation is charged. I see no basis, therefore, upon

which she can be held as an indemnitor of the defendants against the liability imposed on them arising out of loss to the estate. Objection to evidence offered upon which ruling is required is overruled. Motions upon which decision has been reserved are denied except as otherwise above indicated. In each instance of an adverse ruling to protect the rights of the respective parties affected exception is allowed. Under the facts in this case it would seem the tender was sufficient or waived. The decision in *E. T. C. Corp.* v. *Title Guar. & Trust Co.* (271 N. Y. 124) does not appear to be applicable to the facts here.

The value of securities, and the money in addition delivered by plaintiff to defendants on September 20, 1929, was $12,628. Of this amount $2,000, if the above opinion is correct, must be deducted. On the balance of $10,628 interest must be computed to date and added. Against this amount defendants are entitled to deduct the total dividends received by plaintiff on the Transamerica stock, which appear to amount to $552.56, and Transamerica is entitled to receive from plaintiff the stock certificates for 199 shares of its stock properly indorsed. These shares at the time of repudiation appear to be of the value of $5\frac{5}{8}$ or a total of $1,119.38. Judgment is directed to be entered accordingly.